Filed Sept. 21, 1894.

---

No. 16,897.

## MURPHY v. BEARD.

GRAVEL ROAD.—*Assessment Lien.*—*Statute Construed.*—*Act of 1877.*—*Act of 1885.*—The provision of the act of 1877, providing that a gravel road assessment shall constitute and be considered a first lien on the real estate assessed, in the same manner as other taxes, was not qualified or limited by the act of 1885 providing that such lien shall relate to the time of the filing of the petition.

SAME.—*Assessment Lien.*—*Senior to Other Ordinary and Pre-existing Liens.*—The lien provided for in such act (act of 1877) is senior to pre-existing and subsequent ordinary liens.

SAME.—*Assessment Lien.*—*Priority of.*—*Power of Legislature to So Enact.*—*Constitutional Law.*—The Legislature has the power to enact that such assessment liens shall take precedence over other pre-existing liens, upon the theory that the improvement enhanced the value of the security.

SAME.—*General Notice.*—*When Presumed to Have Been Given.*—*Binding on Mortgagee and Purchaser Under Mortgage.*—The general notice required in a gravel road proceeding, which, in the absence of allegations to the contrary, will be presumed to have been given, is sufficient to bind a mortgagee of the land affected by such proceeding; and the purchaser under such mortgage, after the assessment, is bound by the proceeding which bound the mortgagee.

MORTGAGE.—*Mortgagee Takes Subject to the Rights of the Public.*—*Priority of Liens.*—*Eminent Domain.*—As the purchaser of real estate takes the property subject to the implied paramount right of the public, so the mortgagee takes his mortgage with notice of such paramount right, and must submit to its subsequent exercise.

From the Huntington Circuit Court.

*T. G. Smith*, for appellant.

*L. P. Milligan, S. E. Cook* and *O. W. Whitelock*, for appellee.

Murphy v. Beard.

HACKNEY, C. J.—The record presents the question of the sufficiency of two paragraphs of complaint to which the circuit court sustained a demurrer.

The facts alleged in each paragraph were that the appellant held a tract of land by purchase under a mortgage of September, 1872, a foreclosure in April, 1879, a sale in 1889, and a sheriff's deed in 1890; that the appellee, as treasurer of Huntington county, was threatening to enforce against said land certain assessments of benefits from the construction of a free gravel road, which assessments were apportioned and charged against said land in proceedings instituted before the board of county commissioners in March, 1881, and terminated before the appellant's purchase.

It was also alleged that neither the mortgagee nor the purchaser was a party to the proceeding in which said assessments were made.

The relief sought was, by the first paragraph, an injunction against the enforcement of said assessments, and, by the second paragraph, a decree that said assessments were junior to said mortgage and that the county's right of redemption be foreclosed.

The assessments were made under the act of March 3, 1877; R. S. 1881, sections 5091, et seq.; R. S. 1894, sections 6855, et seq. By the sixth section of that act, it was provided that "The said assessment upon lands, under the provisions of this act, shall be placed upon a special duplicate * * * and * shall constitute and be considered a first lien on the real estate assessed, in the same manner as other taxes are."

One contention of the appellant is that section 8, Acts 1885, Elliott's Supp., section 1479, R. S. 1894, section 6886, adds to the foregoing provision the qualification that such lien shall relate to the time of filing the peti-

tion, and that, therefore, no authority exists for giving the assessment priority over a mortgage executed before the filing of the petition.

The act in which the provision referred to is found has been expressly held to constitute "a complete scheme or system for the construction of gravel roads, and for the method of procedure in making and collecting assessments," and that it does not repeal or otherwise affect the provisions of the act of 1877. *Robinson* v. *Rippey,* 111 Ind. 112.

Adhering to that decision, we conclude that the act of 1885 does not qualify or limit the lien provided by the act of 1877.

It is further insisted that the mortgagee and the purchaser at the foreclosure sale, not having been parties to the gravel road proceeding, are not bound by the assessments. The act of 1877 does not contemplate adversary proceedings, nor that special notice shall be given, especially to the land-owners, incumbrancers or others interested. The jurisdiction of the board is invoked by *ex parte* petition, and all persons interested are notified by a general notice of the time and place of the viewers' meeting, the kind of improvement sought, and the places of beginning and terminus of the road, and of any intermediate points. After notice, exceptions may be filed and heard and further proceedings continued.

If, therefore, the mortgagee was a proper or necessary party to the proceeding, the general notice, which, we presume, in the absence of allegations to the contrary, was given, was sufficient to bind him as a party to the same extent as if he had been specially named and notified as a party. As to the purchaser, his interests did not attach until after the assessments were made, and it could not have been anticipated that he should be named as a party. Being a purchaser under the mortgagee, it

is perfectly clear that he would be bound by any proceeding which bound the mortgagee.

It remains to be determined whether the mortgagee, treated as a party, lost the priority of his mortgage as against the assessments. It will be observed that the enactment of the statute under which the proceedings were had was subsequent to the execution and recording of the mortgage, and it will be observed also that by the language of the statute the assessments were to "constitute and be considered a first lien on the real estate assessed, in the same manner as other taxes are."

The appellant insists that the intention of the Legislature to make this provision retroactive is not manifest, and that under the rules of statutory construction it should be held to have only prospective application, and, further, if held to be retroactive, that the Legislature exceeded its power in depriving the mortgagee of a vested right in the property and in an established security.

To the first of these propositions counsel cite *Cook* v. *State, for Use*, 101 Ind. 446, where it was held that, under section 4278, R. S. 1881, providing that the amount of the assessments upon lands for the construction of drains "shall be a lien upon the lands so assessed, from the date of recording notice," etc. Such assessments were not senior to a prior mortgage.

The language of the two statutory provisions is so widely different as to deprive the construction of either of any force in the construction of the other. In the case cited, it could not have been held that the Legislature intended to give the lien so created precedence over liens perfected before the recording of the notice of the establishing of the work. In the present case the statute provides, as we have seen, that the lien is constituted and is to be considered "a first lien on the real estate assessed, in the same manner as other taxes are."

We have no doubt of the intention of the Legislature in this instance to constitute such assessments a lien senior to pre-existing and subsequent ordinary liens. The language that they shall be "a first lien * * * as * taxes are," could hardly have been more expressive of such intention.

The remaining inquiry, therefore, is as to the power of the Legislature to so enact. That the assessment charged against the lands mortgaged was for a public purpose is without dispute, and the right to make it rests upon the powers and doctrines both of eminent domain and of taxation, just as private property may be taken for public streets, highways, drains, viaducts and other public uses; as burdens may be levied for the public uses, and as the benefits derived from the special advantages gained by such property, from the location of any such public use or improvement may be made a special charge against it. The ownership in fee of the real estate affected by such uses, while a vested right, is not more sacred than the right of the public to appropriate such real estate to such uses. When ownership is acquired, it is necessarily with the implied understanding that it is subject to this paramount right of the public. It is needless that we should multiply illustrations or cite authorities to these propositions so well settled and so often observed. Treating the appellant's security as a vested right, we may ask, is it more potent against the rights of the public than the ownership of the land itself? Certainly not.

In *State, ex rel.*, v. *Ætna Life Ins. Co.*, 117 Ind. 251, it was said: "We have no doubt that it would have been within the power of the Legislature to provide by express words that the lien should have priority over preëxisting mortgages. *Provident Institution* v. *Jersey City*, 113 U. S. 506."

The case there cited differs from the present only in the fact that the law authorizing the lien was enacted before the execution of the mortgage lien. If, however, we are correct in the proposition that a purchaser takes title with the implied paramount right of the public for the uses named, the lienor takes his mortgage and makes his loan with notice of that paramount right, and must submit to its subsequent exercise.

Our quotation from *State, ex rel.*, v. *Ætna Life Ins. Co.*, *supra*, was repeated in *Pierce* v. *Ætna Life Ins. Co.*, 131 Ind. 284, with the following statement: "Indeed, there would seem to be much reason for providing that a mortgagee, whose security is enhanced in value by the construction of a public drain, should have the lien of his mortgage subordinated to the lien of a fair assessment for the cost of its construction."

To the same effect, it was said in *Provident Institution* v. *Jersey City*, *supra*, that: "The law which gives to the last maritime liens priority over earlier liens in point of time, is based on principles of acknowledged justice. That which is given for the preservation or betterment of the common pledge is in natural equity fairly entitled to the first rank in the tableau of claims. Mechanics' lien law stand on the same basis of natural justice."

In *Watts* v. *Sweeney*, 127 Ind. 116, the principle above suggested was applied to the lien of a mechanic making repairs upon a chattel.

If the gravel road enhanced the value of the security, and it is upon the presumption that it did that the assessment was authorized and was made, it is only equitable to charge the assessment against the land senior to the mortgage; and if the power to do so were denied, the necessary functions of government, exercised under the powers of eminent domain, could be obstructed and prac-

tically defeated by the execution of liens by the property-owner opposed to public improvements.

In our opinion the ruling of the circuit court, in sustaining the demurrer to the complaint, was correct, and the judgment is affirmed.

DAILEY, J., did not participate in this case.

Filed Sept. 21, 1894.