# FLORIDA CENTRAL AND PENINSULAR RAILROAD COMPANY *v.* REYNOLDS.

### ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 183. Argued November 5, 6, 1901.—Decided January 6, 1902.

There is nothing in the Federal Constitution which forbids a State to reach backward and collect taxes from certain kinds of property which were not at the time collected through lack of statutory provision therefor, or in consequence of a misunderstanding as to the law, or from neglect of administrative officials, without also making provision for collecting the taxes, for the same years, on other property.

THE constitution of Florida of 1868, art. 16, sec. 24, as amended by art. 11 of the amendments of 1875, is as follows:

"The property of all corporations, whether heretofore or hereafter incorporated, shall be subject to taxation, unless such property be held and used exclusively for religious, educational, or charitable purposes."

Sec. 26, chap. 3413, of the Laws of Florida, March 5, 1883, reads:

"If any assessor, when making his assessments, shall discover that any land in his county was omitted in the assessment roll of either or all of the three previous years, and was then liable to taxation, he shall, in addition to the assessment of such land for that year, assess the same separately for such year or years that may have been so omitted, at the just value thereof in such year, noting distinctly the year when such omission occurred; and such assessment shall have the same force and effect as it would have had if made in the year the same was omitted, and taxes shall be levied and collected thereon in like manner and together with the taxes of the year in which the assessment is made; but no lands shall be assessed for more than three years' arrears of taxes, and all lands shall be subject to such taxes omitted to be assessed, into whosoever hands they may come."

In 1885 this statute was passed:

"Sec. 1. That in all cases in which any railroad or the properties thereto belonging· or appertaining in this State, in the tax years commencing March 1, 1879, 1880 and· 1881, or any of such years, were not assessed for taxes for such years, it shall be the duty of the comptroller to cause the same or so much thereof as were not assessed to be assessed for state and county taxes, and twenty per centum of the taxes so assessed for said years and now unpaid shall be collected at the same time the taxes for the year 1885 shall be assessed and collected, and each. year thereafter an additional twenty per centum of said taxes shall be collected at the same time and in the same manner as the taxes for such year are collected, until the whole amount of said unpaid taxes for the years 1879, 1880 and 1881 are paid.

" The taxes to be assessed under this act shall be the same in amount as they would have been had they been assessed in such years or any of them as to which there was a failure to assess." Laws of Florida, February 12, 1885, chap. 3558.

This statute was followed in 1891 by one in these words :

" Sec. 1. That the state and county taxes assessed by the comptroller of the State of Florida, upon any railroads and the properties thereof in said State, for the years 1879, 1880 and 1881, under and in pursuance of ' An act to provide for the assessment and collection of taxes on railroads and the properties thereof for the years 1879, 1880 and 1881, as to which there was no assessment,' but which have not been collected, shall· be collected, and the payment thereof enforced at the same times and in the same manner, as is now, or may hereafter be provided by law, for the collection and the enforcement of the payment of taxes assessed upon the railroads and the properties thereof in the State of Florida." Laws of Florida, June 8, 1891, chap. 4073.

The assessment of railroad property in Florida was not made by the county assessors but by the comptroller of the State. Acts, State of Florida, March 7, 1879, chap. 3099, secs. 45, 46.

The plaintiff is a corporation organized under the laws of Florida on November 17, 1888, and was the owner of several lines of railway, which on May 1, 1889. it acquired from the

Florida Railway and Navigation Company, under foreclosure proceedings. The Florida Railway and Navigation Company was organized on February 29, 1884, by the consolidation of several companies, and on July 1 of that year it placed upon its properties a trust deed to secure the payment of $10,000,000 bonds.

This bill was filed November 2, 1892, in the circuit court of the second judicial circuit of Florida, in and for the county of Leon. Its purpose was to restrain the collection of certain taxes and to recover other taxes paid under protest. After three appeals to the Supreme Court of the State (35 Fla. 625, 39 Fla. 243, 28 Southern Rep. 861), the final outcome of the litigation was a decree dismissing the plaintiff's bill *in toto.*

*Mr. Frederic D. McKenney* and *Mr. Wayne Mac Veagh* for plaintiff in error. *Mr. Thomas L. Clarke* and *Mr. John A. Henderson* were on their brief.

*Mr. W. B. Lamar* for defendants in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

No question is presented concerning the claim for the taxes paid under protest, counsel for plaintiff stating in their brief that " the sole relief sought in this court is to obtain a reversal of the decree of the state Supreme Court, in so far as it reversed the decree of the circuit court enjoining the sale of complainant's lines of railroad for the taxes assessed for the years 1879, 1880 and 1881, such taxes amounting to $96,181.69," and in respect to this matter they sum up their contention in these words:

" By the law of 1885 the State attempted to authorize the assessment of taxes for 1879–1881, but only upon property belonging to railroad companies, though it appears from the record that other properties of like class, *i. e.*, real estate belonging to individuals and owners, not railroad companies, had not been assessed for taxes for such years.

"It surely cannot be 'due process of law' for the State of Florida in 1885, to arbitrarily impose a burden theretofore unheard of upon security holders who in 1884 had invested their money upon the faith of a title then clear of such burden.

" It surely cannot be less than a denial of the equal protection of the laws for the State of Florida in 1885 to impose burdens theretofore unheard of upon the property of railroad companies, which under the laws of Florida is real estate, while permitting other real estate, otherwise owned, to escape such burdens."

The decision of the Supreme Court of the State establishes that these proceedings are not in conflict with the constitution of Florida. The single question, therefore, to consider is whether there is anything in the Federal Constitution which forbids a State to reach backward and collect taxes from certain kinds of property which were not at the time collected through lack of statutory provisions therefor, or in consequence of a misunderstanding as to the law or from neglect of administrative officials, without also making provision for collecting the taxes for the same years on other property. It will be perceived that there was no new levy of taxes. No act of the legislature was passed imposing an additional burden upon the property of the State in general, or upon any particular property, but the case is one in which general levies having been made for the years named certain property which ought to have paid taxes under them—and thus contributed its share of the expenses of the State—failed to do so, and the effort is to compel that property to discharge its obligation. The objection is not that the property ought not during those years to have paid its proportion of the taxes, but that it ought not now to be compelled to pay such proportion because certain other property was similarly situated and no effort is made to compel payment from it.

The fault, if fault there be, is one of omission rather than commission. The act of the legislature is not a mandate to a single officer, charged with the duty of assessing all property, to assess certain property and to omit to assess the rest, but the general legislation having provided that railroad property should be assessed by the comptroller and real estate by county assessors, the act simply directed the comptroller to discharge the

duties of assessment as to the property committed to his care, and omitted any direction to the county assessors. This omission, it is contended, makes the act unconstitutional. In other words, the legislature may not pass an act directing one officer to discharge his duty unless it couples therewith a direction to other officers charged with kindred duty to perform theirs. It would seem to follow that if the legislature had, on the same day, passed another act with like command to the county assessors, the two acts together would be constitutional, though each standing alone would not be; and as the time of its passage is not generally of the essence of a statute, it would also seem to follow that if the legislature should to-day pass an act directing the county assessors to assess delinquent real estate for those years, this late enactment would give constitutional vitality to that passed years ago. How far can this theory of constitutionality be sustained?

It must be remembered that "taxes are not debts in the ordinary sense of that term;" that they are "the enforced proportional contribution of persons and property, levied by the authority of the State for the support of the government, and for all public needs." Cooley on Taxation, 1st ed. pp. 13 and 1. They are obligations of the highest character, for only as they are discharged is the continued existence of government possible. They are not cancelled and discharged by the failure of duty on the part of any tribunal or officer, legislative or administrative. Payment alone discharges the obligation, and until payment the State may proceed by all proper means to compel the performance of the obligation. No statutes of limitation run against the State, and it is a matter of discretion with it to determine how far into the past it will reach to compel performance of this obligation.

No question of *bona fide* purchase arises, for it was held by the Supreme Court that inasmuch as no assessment of this railroad property had been made during the years named, and no lien thereon for taxes established, a *bona fide* purchaser would have taken it free from any liability for such taxes, but it was also held that the present owner was not a *bona fide* purchaser, and this being a local matter the decision is conclusive upon this court.

The question how far the provisions of the Fourteenth Amendment interfere with a state's system of taxation has been more than once before this court. It was very carefully considered in *Bell's Gap Railroad Co.* v. *Pennsylvania*, 134 U. S. 232, and the general rule thus stated by Mr. Justice Bradley on page 237:

"The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. . . . We think that we are safe in saying that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation."

It is well known that the States vary materially in their systems of taxation. Each determines for itself what in its judgment is best for the interests of its people. In some there are general exemptions of particular classes of property, such as property used for religious, educational and benevolent purposes. Some, in order to encourage certain industries, such as manufacturing, make either general or special exemptions. Some think it for their best interest to derive their revenues from personal property, corporations and licenses, and exempt real estate. In some, contracts for exemption are authorized by the state constitution; in others, they are forbidden. Now, considering the great diversity in these systems it would obviously have worked a marked revolution if the first section of the Fourteenth Amendment had been construed as compelling a cast iron rule of equal taxation. It was not intended, as held in the case quoted from, and also in *Barbier* v. *Connolly*, 113 U. S. 27, to restrain the legislature from any proper and legitimate classification both as respects property for taxation and the methods

of assessment and taxation. Doubtless it would prohibit a State from selecting some obnoxious person and casting upon his property the sole burden of taxation, or a burden differing from that cast upon others whose property was similarly situated, but it does not prevent a State from exercising its judgment as to the property to be taxed and the modes of taxation, providing all property similarly situated is treated in the same way.

Besides those just cited, other cases in this court affirm the same propositions. In *The Delaware Railroad Tax,* 18 Wall. 206, a special act of the State of Delaware imposing a tax of three per cent upon the net earnings or income received by railroad and canal companies from all sources was sustained, the court saying (p. 231):

"The State may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed and the rate of taxation, however arbitrary and capricious, are mere matters of legislative discretion. It is not for us to suggest in any case that a more equitable mode of assessment or rate of taxation might be adopted than the one prescribed by the legislature of the State; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction."

In *Home Insurance Company* v. *New York,* 134 U. S. 594, a tax upon the corporate franchise or business of corporations, graded according to the dividends declared by the corporation, was sustained, the court, on p. 606, referring in these words to the objection that the tax was in conflict with the Fourteenth Amendment:

"But the amendment does not prevent the classification of property for taxation—subjecting one kind of property to one rate of taxation and another kind of property to a different rate —distinguishing between franchises, licenses and privileges, and visible and tangible property, and between real and personal property. Nor does the amendment prohibit special legislation. Indeed, the greater part of all legislation is special either in the extent to which it operates, or the objects sought to be obtained

by it. And when such legislation applies to artificial bodies, it is not open to objection if all such bodies are treated alike under similar circumstances and conditions, in respect to the privileges conferred upon them and the liabilities to which they are subjected. Under the statute of New York all corporations, joint stock companies and associations of the same kind are subjected to the same tax. There is the same rule applicable to all under the same conditions in determining the rate of taxation. There is no discrimination in favor of one against another of the same class. *Barbier* v. *Connolly*, 113 U. S. 27, 32; *Soon Hing* v. *Crowley*, 113 U. S. 703, 709; *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512, 523; *Missouri Pacific Railway* v. *Mackey*, 127 U. S. 205, 209; *Minneapolis &c. Railway Co.* v. *Beckwith*, 129 U. S. 26, 32."

In *Giozza* v. *Tiernan*, 148 U. S. 657, a difference in the amount of license required from parties carrying on different kinds of business, was the ground of attack upon a state statute, but the statute was sustained, and in respect to the Fourteenth Amendment it was said (p. 662): "Nor in respect of taxation was the amendment intended to compel the State to adopt an iron rule of equality; to prevent the classification of property for taxation at different rates; or to prohibit legislation in that regard, special either in the extent to which it operates or the objects sought to be obtained by it. It is enough that there is no discrimination in favor of one as against another of the same class. *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232; *Home Insurance Co.* v. *New York*, 134 U. S. 594; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339. And due process of law within the meaning of the amendment is secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government. *Leeper* v. *Texas*, 139 U. S. 462."

In *King* v. *Mullins*, 171 U. S. 404, a discrimination in the laws of West Virginia as to the matter of forfeiture in tax proceedings between the owners of tracts of less than one thousand acres and those owning larger tracts, was challenged, but the court overruled the contention, saying (p. 435):

"Another point made by the plaintiff in error is, that the

provision of the constitution of Virginia, exempting tracts of less than one thousand acres from forfeiture is a discrimination against the owners of tracts containing one thousand acres or more, which amounts to a denial to citizens or landowners of the latter class of the equal protection of the laws. We do not concur in this view. The evil intended to be remedied by the constitution and laws of West Virginia was the persistent failure of those who owned or claimed to own large tracts of land, patented in the last century, or early in the present century, to put them on the land books, so that the extent and boundaries of such tracts could be easily ascertained by the officers charged with the duty of assessing and collecting taxes. Where the tract was a small one, the probability was that it was actually occupied by some one, and its extent or boundary could be readily ascertained for purposes of assessment and taxation. We can well understand why one policy could be properly adopted as to large tracts which the necessities of the public revenue did not require to be prescribed as to small tracts. The judiciary should be very reluctant to interfere with the taxing systems of a State, and should never do so unless that which the State attempts to do is in palpable violation of the constitutional rights of the owners of property. Under this view of our duty, we are unwilling to hold that the provision referred to is repugnant to the clause of the Fourteenth Amendment forbidding a denial of the equal protection of the laws."

See also *Pacific Express Company* v. *Seibert*, 142 U. S. 339; *Thomas* v. *Gay*, 169 U. S. 264. Text-books affirm the same doctrine. Burroughs on Taxation, sec. 56, says: "The rule is, that the legislature may select the subjects of taxation in their discretion;" and in Cooley on Taxation, chap. 6, p. 124, it is said: "There is no imperative requirement that taxation shall be equal. . . . The legislature must decide when and how and for what public purposes a tax shall be levied, and must select the subjects of taxation. This is legislative, and the legislative conclusion in the premises must be accepted as proper and final."

*Gilman* v. *Sheboygan City*, 2 Black, 510, is not in conflict

with these views. True, in that case a tax levied for a special
purpose by the city was adjudged void on the ground that it
was levied exclusively on real property, but the decision was
placed upon a conflict with the constitution of the State as in-
terpreted by its Supreme Court. In other words, the Supreme
Court of the State having in several cases held that such a
discrimination avoided a tax, this court simply followed those
decisions, saying, p. 518, that it considered itself " bound in
cases like this to follow the settled adjudications of the highest
state court giving constructions to the constitution and laws
of the State."

In the light of these decisions if the State of Florida had
deemed it for the best interests of its people to encourage the
building of railroads by exempting their property from taxa-
tion, such exemption could not have been adjudged in conflict
with the Fourteenth Amendment, even though thereby the ·
burden of taxation upon other property in the State was
largely increased. Indeed, that was the policy of the State
prior to the constitution of 1868. And, conversely, if the State
had subjected railroads to taxation, while exempting some
other class of property, it would be difficult to find anything
in the Fourteenth Amendment to overthrow its action. The
mere fact that such legislation may operate with harshness is
not of itself sufficient to justify the court in declaring it un-
constitutional. These matters of classification are of state
policy, to be determined by the State; and the Federal gov-
ernment is not charged with the duty of supervising its ac-
tion.

If the State, as has been seen, has the power, in the first in-
stance, to classify property for taxation, it has the same right
of classification as to property which in past years has escaped
taxation. We must assume that the legislature acts according
to its judgment for the best interests of the State. A wrong in-
tent cannot be imputed to it. It may have found that the
railroad delinquent tax was large, and the delinquent tax on
other property was small and not worth the trouble of special
provision therefor. If taxes are to be regarded as mere debts,
then the effort of the State to collect from one debtor is not

prejudiced by its failure to make like effort to collect from another. And if regarded in the truer light as a contribution to the support of government, then it does not lie in the mouth of one called upon to make his contribution to complain that some other person has not been coerced into a like contribution. In *Winona & St. Peter Land Co.* v. *Minnesota*, 159 U. S. 526, legislation of Minnesota for the collection of delinquent taxes on real estate was challenged because of a lack of similar legislation in respect to personal property, but the challenge was overruled, the court saying (p. 539):

" This statute rests on the assumption that, generally speaking, all property subject to taxation has been reached and aims only to provide for those accidents which may happen under any system of taxation, in consequence of which here and there some item of property has escaped its proper burden ; and it may well be that the legislature in view of the probabilities of changes in the title or situs of personal property might deem it unwise to attempt to charge it with back taxes, while at the same time, by reason of the stationary character of real estate, it might elect to proceed against that. At any rate, if it did so it would violate no provision of the Federal Constitution, and whether it did so or not was a matter to be determined finally by the Supreme Court of the State."

Our conclusion is that, so far as the Federal Constitution is concerned, the legislature of Florida had the power to compel the collection of delinquent taxes from the railroad companies for the years 1879, 1880 and 1881, even though it made no provision for the collection of delinquent taxes for those years on other property. The judgment, therefore, of the Supreme Court of Florida is

*Affirmed.*

MR. JUSTICE BROWN, dissenting.

I have no doubt whatever of the validity of the act of the legislature of Florida of 1883, requiring the assessor, upon discovering that any land in his county was omitted from the assessment roll of the three previous years, to assess the same

for such years, since this was a provision applicable to all real estate in his county omitted from the assessment rolls for such years. But the act of 1885 did not proceed upon this basis. It arbitrarily selects railroad properties from all other species of property, and requires their assessment for another three years prior to the three covered by the act of 1883, and thereby, as it seems to me, denies them the equal protection of the laws. Under the act of 1883 *all* owners of real property omitted from the assessment rolls of the three previous years were put upon an equality, and made debtors to the State for the taxes of those years; but to segregate railroads from all other delinquent property, and tax them for another three years, as is done by the act of 1885, seems to me to open the statutes to the criticism of the court, wherein it is said : " Doubtless it " (the Fourteenth Amendment) " would prohibit a State from selecting some obnoxious person and casting upon his property the sole burden of taxation, or a burden differing from that cast upon others whose property was similarly situated."

It appears quite immaterial that under the act of 1883 the property was to be assessed by the county assessors, and in the act of 1885 by the State Comptroller. The wrong done to the railway company is not in the selection of an agent to collect the taxes, but in the selection of a specially odious tax, namely, for antecedent years, and imposing it upon one class of delinquents alone. If, for instance, a license tax, varying in amount, were imposed upon a dozen different occupations, and by another act, subsequently passed, were made retroactive for three years, could the legislature by still another act, made applicable only to those employed in one out of these twelve occupations, make such act retroactive for another three years, without denying to those engaged in that occupation the equal protection of the laws ?

I do not wish to be understood as saying that the State may not impose a specific and even a discriminating tax upon railways, but after the liability to the State of all real property owners has once been established, and all placed upon the same footing, I do not think a particular species of property can be arbitrarily taken and subjected to a discriminating tax for a

series of years, during which, and upon the ground that, the state officers had neglected their duty. If state railway taxes may be made retroactive for three years, and again for another three years, I see no reason why this method of taxation may not be continued indefinitely so long as any property remains from which it may be collected. This kind of discrimination seems to be measurable only by the rapacity of the legislature.