## THE CITY OF SEATTLE *v.* KELLEHER.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WASHINGTON.

No. 29. Argued October 28, 1904.—Decided November 28, 1904.

An assessment on lands for the entire expense of opening a street levied under a front foot assessment authorized by statute is not necessarily void under the Fourteenth Amendment because levied after the work was completed, or because at the time the work was ordered the municipality had power, under statutes repealed after the completion of the work and before the assessment was made, to include a portion of the expense in the general taxes and to levy the assessment on a valuation basis under which a smaller amount would have been assessed against these lands.

Taxation, whether general or special, is not subject to the rules applicable to a vendor's lien and its enforcement against a *bona fide* purchaser for value, and it is for one purchasing lands after a public improvement has been completed to inquire whether it has been paid for, and the same rules as to the enforcement of the assessment applicable to the former owners are applicable to him.

THE facts are stated in the opinion.

*Mr. Mitchell Gilliam,* with whom *Mr. Walter S. Fulton* was on the brief, for appellant:

The intention to dedicate and the acceptance of the city appear and constituted a valid common law 'dedication. Elliott on Roads and Streets, Ch. V, 85; Dillon on Mun. Corp., 4th ed., vol. 2, 737; 5 Am. & Eng. Ency. of Law, 395; *New Orleans* v. *United States,* 10 Peters, 662; *City of Cincinnati* v. *White,* 6 Peters, 431; *Godfrey* v. *City of Alton,* 12 Illinois, 29; *Surgeant* v. *Bank,* 4 McLean, 339. An incomplete statutory dedication may become one at common law by acceptance by

the public. *Fulton* v. *Mehrenfeld*, 8 Ohio St. 440; *Maywood Co.* v. *Village of Maywood*, 6 N. E. Rep. 866.

The owner is precluded from revoking such dedication. 61 Am. Dec. 221; *Heirs of David* v. *New Orleans*, 79 Am. Dec. 586; *People* v. *Jones*, 6 Michigan, 176. Privies in estate are bound to the same extent as grantors. *Warren* v. *Town of Jackson*, 15 Illinois, 236; see also *Kenyon* v. *Knipe*, 2 Washington, 394; *Tilzie* v. *Haye*, 8 Washington, 187; *Schettler* v. *Lynch*, 64 Pac. Rep. 955.

Even if some work was improperly done or an improper item included, the entire assessment would not be vitiated. *Cincinnati* v. *White Lead Co.*, 44 Ohio St. 243; *Dyer* v. *Scalmanini*, 69 California, 637. The act provides a method of objection and appeal and that procedure must be followed or the right lost. *Tumwater* v. *Pix*, 18 Washington, 153; *New Whatcom* v. *Bellingham Bay Imp. Co.*, 16 Washington, 131; *Annie Wright Seminary* v. *City of Tacoma*, 23 Washington, 109.

A reassessment can be made by a different method from that in force when the original assessment was made. *Wilson* v. *Seattle*, 2 Washington, 543.

The question of adopting a method of levying assessments for local improvements lies purely in legislative discretion, and so long as that discretion is exercised in a reasonable manner, and gives parties interested an opportunity to be heard with the right to appeal to the courts from the determination of the city council, it cannot be said that there is a violation of the Fourteenth Amendment. *Norwood* v. *Baker*, 172 U. S. 269; *Tonawanda* v. *Lyon*, 181 U. S. 389; *Wright* v. *Davidson*, 181 U. S. 371; *French* v. *Asphalt Paving Co.*, 181 U. S. 325.

There is nothing in the front-foot method repugnant either to the Constitution of the United States, to the state constitutions and laws, to the decisions of the courts or to the conclusions of practical experience. *Walston* v. *Nevin*, 128 U. S. 582; *Davidson* v. *New Orleans*, 96 U. S. 97, 104.

So the determination of the taxing district and the manner of the apportionment are all within the legislative power. *Spencer* v. *Merchant*, 125 U. S. 345; *Stanley* v. *Supervisors*, 121 U. S. 535, 550; *Mobile* v. *Kimball*, 102 U. S. 591; *Hagar* v. *Reclamation District*, 111 U. S. 107; *United States* v. *Memphis*, 97 U. S. 284; *Laramie* v. *Albany Co.*, 92 U. S. 307; *Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 176; *Parsons* v. *Dist. of Col.*, 170 U. S. 51; *Kidd* v. *Parsons*, 128 U. S. 1; *People &c.* v. *Brooklyn*, 55 Am. Dec. 276; 24 Am. & Eng. Ency. Law, 1st ed., 71; *Mattingly* v. *Dist. of Columbia*, 97 U. S. 687; *Shoemaker* v. *United States*, 147 U. S. 282; *Paulsen* v. *Portland*, 149 U. S. 30; *Bauman* v. *Ross*, 167 U. S. 590; *Lexington* v. *McQuillan*, 35 Am. Dec. (Ky.) 161; *Dorgan* v. *Boston*, 12 Allen, 238; Cooley's Const. Lim., 6th ed., 623; *Baltimore* v. *University*, 56 Maryland, 499; *Northern Ind. R. R. Co.* v. *Connelly*, 10 Ohio St. 159; 2 Dillon Municipal Corporations, 2d ed., § 761; Elliott on Roads and Streets, 391; Cooley on Taxation, 2d ed., 644; *Whiting* v. *Townsend*, 57 California, 515; *Emory* v. *San Francisco Gas Co.*, 28 California, 345; *Hayden et al.* v. *City of Atlanta*, 70 Georgia, 817; *Bacon* v. *Mayor of Savannah*, 32 A. & E. Corpn. Cas. 244; *Springfield* v. *Green*, 120 Illinois, 269; *Palmer* v. *Stumph*, 29 Indiana, 337; *Amery* v. *Keokuk*, 72 Iowa, 701; *Sheley* v. *Detroit*, 45 Michigan, 431; *Farrar* v. *St. Louis*, 80 Missouri, 379; *Sigler* v. *Fuller*, 34 N. J. L. 232; *O'Reilly* v. *Kingston*, 114 N. Y. 439; *Roberts* v. *First Nat. Bank*, 8 North Dakota, 504; *Upington* v. *Treasurer*, 24 Ohio St. 232; *King* v. *City of Portland*, 2 Oregon, 147; *Harrell* v. *Storrie*, 47 S. W. Rep. 838; *Davis* v. *Lynchburg*, 84 Virginia, 861; *Austin* v. *Seattle*, 2 Washington, 669; *Weeks* v. *City of Milwaukee*, 10 Wisconsin, 243.

After a person has signed a petition for an improvement, which can only be paid for by means of an assessment on contiguous property, he is estopped from contesting the validity of the assessment, especially after the work has been completed and accepted by the proper authorities. Cooley, Tax'n, 819; *Ball* v. *Tacoma*, 9 Washington, 592; *Motz* v. *City of*

*Detroit,* 18 Michigan, 495; *Wood* v. *Norwood Twp.,* 52 Michigan, 32; *Ricketts* v. *Spraker,* 77 Indiana, 371; *Patterson* v. *Baumer,* 43 Iowa, 477; *Ferson's Appeal,* 96 Pa. St. 140; *Evansville* v. *Pfisterer,* 34 Indiana, 36; Elliot, 420; *Tash* v. *Adams,* 10 Cush. 252; *Wright* v. *Tacoma,* 19 Pac. Rep. 45; *Powers* v. *New Haven,* 120 Indiana, 185; 11 Am. & Eng. Ency. Law, 2d ed., 429; *Taber* v. *Ferguson,* 109 Indiana, 227; *Ross* v. *Stackhouse,* 114 Indiana, 200; *Jenkens* v. *Stetler,* 118 Indiana, 275; *Johnson* v. *Allen,* 62 Indiana, 57.

Due process of law is afforded where there is opportunity to be heard before the body which is to make the assessment, and the legislature of a State may provide that such hearing shall be conclusive so far as the Federal Constitution is concerned.

*Mr. Frederick Bausman,* with whom *Mr. Daniel Kelleher* and *Mr. G. Meade Emory* were on the brief, for appellee:

The former owner could have opposed the reassessment. Inviting the municipality to open a highway he did so according to the statute. *Howell* v. *Tacoma,* 3 Washington, 715; *Grant* v. *Bartholomew,* 58 Nebraska, 839; *Birdseye* v. *Clyde,* 61 Ohio St. 27; *Smith* v. *Minto,* 30 Oregon, 351; *Terre Haute* v. *Mack,* 139 Indiana, 99.

When a man's land is assessed unlawfully or in an unconstitutional manner for street improvements, he may contest the validity of the assessment, although he was a petitioner for the improvement.

As to the planking, see Session Laws, Washington Territory, 238, § 7.

Leaving out the violation of plain statutes involved here, there is such inequality as amounts to confiscation. It was grossly unnecessary and unjust to include this vacant, unoccupied tract in a district which was to bear the expense of planking when that planking was extended only along the settled portion of the street, and was to stop a thousand feet from our own tract, vacant and wild. *Norwood* v. *Baker,* 172

U. S. 269; *Sears* v. *Boston,* 173 Massachusetts, 71; Cooley, Tax'n, 1209.

Even if the original owner could not avoid the reassessment his grantee could. The reassessment was by a subsequent law against an innocent purchaser. *Richards* v. *Shingle Co.,* 41 Michigan, 860; *Smith* v. *Allen,* 18 Washington, 1; *Tallman* v. *Janesville,* 17 Wisconsin, 51; *Cross* v. *Milwaukee,* 19 Wisconsin, 509, distinguished.

The lien resisted was a secret one. This seems to us not true of liens reassessed under laws existing before the new purchaser comes in. There he buys with the knowledge that the State has already asserted the right, though it has not yet exercised the intention. As against subsequent laws, the purchaser may well protest that at the time he bought, the State had not even asserted a right. The State should be estopped. *Curnen* v. *New York,* 79 N. Y. 511.

There should be notice of some kind in a district assessment. *Scott* v. *Toledo,* 36 Fed. Rep. 385; *Paulsen* v. *Portland,* 149 U. S. 30.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court declaring an assessment upon the plaintiff's land void under the Fourteenth Amendment, and enjoining the city against enforcing the same. The facts are these: Weller Street, in Seattle, runs east from Elliott Bay, and formerly stopped at the east line of Maynard's Donation Claim. The land now belonging to the appellee, the plaintiff below, is a hundred acres lying on the east of that line, extending to the line of the Jackson Street Addition. Weller Street, if extended eastward, would run through the middle of this land for twenty-five hundred feet. While this land belonged to one Hill, in 1889, he petitioned that Weller Street be extended and graded to the Jackson Street Addition line, and he submitted to the City Council and circulated, although he did not record, plans

showing the extension, with his land on the two sides of it divided into lots and blocks. The plan was approved, and in 1890 the city passed an ordinance that Weller Street be graded from the beginning to Jackson Street Addition, and that sidewalks be constructed on both sides of it coextensive with the grade. Ordinance No. 1285. The street was graded, and, according to the testimony, had to be cut and filled almost continuously. It also was planked for some distance, but the planking stopped about a thousand feet before reaching Hill's tract. Then an assessment was levied, but this was held void. The next things that happened were a sale of Hill's land and a mortgage of it in January, 1892, to the appellee, which later was foreclosed. The appellee, who lived out of the State, alleges that he was ignorant of the submission of the plan by Hill.

On March 9, 1893, an act was approved authorizing a new assessment, when the old one had been declared void, upon the lands benefited, to the extent of their proportionate part of the expense of the improvement, based upon its actual value at the time of its completion, and having reference to the benefits received. Notice by publication of a time for hearing objections was provided for, with an appeal to the courts. Laws of 1893, c. 95. When the improvement in question was ordered, by the charter of Seattle the planking was to be paid for out of the general taxes. Laws of 1885, 1886, pp. 238, 241, § 7. The special assessment for the other elements, according to the assessed value of the land, could be imposed upon the abutting property to one hundred and twenty-eight feet back from the street. This was modified by a new charter adopted later in 1890, and still in force. Under the latter the assessment was to be by the front foot, with different percentages for four parallel subdivisions at successive distances from the street up to one hundred and twenty feet. It was to be for the cost of the improvement. To carry out the plan, local improvement districts were to be established, including all the property within the termini of the improvement, and

not more than one hundred and twenty feet on each side of the margin. Reassessments were authorized. In pursuance of the charter an ordinance was adopted by the city providing the manner in which the local assessments should be made. Ordinance No. 2085.

In this state of the ordinances and laws a reassessment of the whole cost of the improvement was ordered in January, 1894, in conformity with the act of 1893, the new charter and the Ordinance No. 2085. Ordinance No. 3199. The proper steps were taken and the assessment was confirmed on March 5, 1894. Ordinance No. 3267. By this assessment the whole cost of the improvement, $35,620.60, was levied on the abutting land, and $14,262.68 was fixed as the plaintiff's share. It is alleged that he thus is charged forty-four per cent under the present plan, whereas under the one in force when the improvement was made he would have been charged only thirty-two per cent. It also is alleged that, being absent from the State, he did not know of the reassessment proceedings until they were concluded.

The bill disputed, among other things, that the prolongation of Weller Street through the plaintiff's land, ever had been dedicated as a street. But in view of the assumption by the Circuit Court that the dedication was made out and the statement by it that the point had been decided by the Supreme Court of the State, this objection, if open, very properly was not pressed before us. See *Seattle* v. *Hill,* 23 Washington, 92. Therefore we have not gone into details upon that part of the case. We see no cause to doubt that the Circuit Court was right. The main ground of argument is that the planking could not be included in the assessment. The reasons, as summed up by the Circuit Court, are that the law in force at the time of doing the work did not authorize a charge for planking upon the abutting property, that the Ordinance No. 1285 ordering the improvement did not authorize any planking, that the city could assess only the land abutting on the improvement and the plaintiff's land was far away from

the planking, and that such an assessment of the whole cost, including the planking, on the property on Weller Street, is absolutely unfair as to the plaintiff's land.

A general attack upon the statute of 1893 is not attempted. It was within the power of the legislature to create, or to authorize the creation, of special taxing districts, and to charge the cost of a local improvement upon the property in such a district by frontage. *Webster* v. *Fargo*, 181 U. S. 394; *French* v. *Barber Asphalt Paving Co.*, 181 U. S. 324; *McNamee* v. *Tacoma*, 24 Washington, 591, 595; Cooley, Const. Lim., 7th ed., 729. The only question of principle, therefore, raised by the inclusion of the planking in the sum of which the plaintiff was to pay his share is whether it was manifestly unfair in this particular case. Taken by itself it looks like an unwarrantable attempt to make one man pay for another man's convenience.

On the other hand, so far as the work was similar in character, throughout the street, we are of opinion that the improvement might be regarded as one. *Webster* v. *Fargo*, 181 U. S. 394. See *Lincoln* v. *Street Commissioners*, 176 Massachusetts, 210, 212. And if this be admitted we cannot say that the assessing board might not have been warranted in thinking that substantial justice was done. There were many cuts and fills made in grading the road. So far as appears, the heaviest work may have been done on the plaintiff's land, which seems to have been the summit of an ascent. Improvement of one sort may have been the greatest there, while that of a different kind, needed where the travel was, was at the other end of the street. It is true that the Circuit Judge considered that there was manifest injustice in assessing the plaintiff's land, which was empty and unimproved, by the front foot at the same rate as the improved land lower down and nearer to the bay, and that his opinion naturally carries weight, from his probable acquaintance with the condition of the place. But we do not find a sufficient warrant for it on the record. We must consider how things looked at the time. The owner of the land desired the improvements, if carried out

as he wished. The extension of the street helped to bring his land into the market. It was more likely to benefit him than those who were lower down. We cannot invalidate the assessment because the speculation has failed. Assuming, without deciding, that the question is open to the plaintiff in this proceeding, we are of opinion that the record does not justify interference by injunction on the ground that the assessment was manifestly unfair.

The answer to the other objections may be made in few words. If, as is said, planking was not authorized under the word "sidewalks" in Ordinance No. 1285, the city has done or adopted the work and presumably has paid for it. At the end the benefit was there, on the ground, at the city's expense. The principles of taxation are not those of contract. A special assessment may be levied upon an executed consideration, that is to say, for a public work already done. *Bellows* v. *Weeks,* 41 Vermont, 590, 599, 600; *Mills* v. *Charleton,* 29 Wisconsin, 400, 413; *Hall* v. *Street Commissioners,* 177 Massachusetts, 434, 439. If this were not so it might be hard to justify reassessments. See *Norwood* v. *Baker,* 172 U. S. 269, 293; *Williams* v. *Supervisors of Albany,* 122 U. S. 154; *Frederick* v. *Seattle,* 13 Washington, 428; *Cline* v. *Seattle,* 13 Washington, 444; *Bacon* v. *Seattle,* 15 Washington, 701; Cooley, Taxation, 3d ed., 1280. The same answer is sufficient if it be true that when the work was done the cost of planking could not be included in the special assessment, which again depends on the meaning of the words "sidewalk" and "pave" in the old Charter, § 8, taken with the special provision for planking in § 7. Laws of 1885- 1886, pp. 238, 241. The charge of planking on the general taxes was not a contract with the landowners, and no more prevented a special assessment being authorized for it later than silence of the laws at the same time as to how it should be paid for would have. In either case the legislature could do as it thought best. Of course, it does not matter that this is called a reassessment. A reassessment may be a new assessment. Whatever the legislature

could authorize if it were ordering an assessment for the first time it equally could authorize, notwithstanding a previous invalid attempt to assess. The previous attempt left the city free "to take such steps as were within its power to take, either under existing statutes, or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property" in any constitutional way. *Norwood* v. *Baker*, 172 U. S. 269, 293; *McNamee* v. *Tacoma*, 24 Washington, 591; *Annie Wright Seminary* v. *Tacoma*, 23 Washington, 109.

We think it unnecessary to consider other questions on the part of the case that we have dealt with. We have said enough in our opinion to show that the enforcement of the assessment lien could not be prevented by the original owner. It is urged, however, that a different rule could be applied in favor of one who purchased the land under the circumstances stated above. But the attempt to liken taxation, whether general or special, to the enforcement of a vendor's lien, and thus to introduce the doctrine concerning *bona fide* purchasers for value, rests on a fallacy similar to that which we have mentioned above, which would deny the right to tax upon an executed consideration. A man cannot get rid of his liability to a tax by buying without notice. See *Tallman* v. *Janesville*, 17 Wisconsin, 71, 76; Cooley, Taxation, 3d ed., 527, 528. Indeed he cannot buy without notice, since the liability is one of the notorious incidents of social life. In this case the road was cut through the plaintiff's land, and, if he had looked, was visible upon the ground. Whether it had been paid for was for him to inquire. The history of what had happened would have suggested that it was not improbable that sooner or later a payment must be made.

*Decree reversed.*

MR. JUSTICE HARLAN and MR. JUSTICE BROWN dissent.