**PEOPLE OF PUERTO RICO v. FEDERAL LAND BANK OF BALTIMORE**
(two cases).

Nos. 3458, 3459.

Circuit Court of Appeals, First Circuit.
Dec. 15, 1939.

Rehearing Denied Jan. 19, 1940.

William Cattron Rigby, of Washington, D. C. (B. Fernandez Garcia, of San Juan, P. R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellant.

Frank Martinez, of San Juan, P. R., for appellee.

Before WILSON and MAGRUDER, Circuit Judges, and McLELLAN, District Judge.

MAGRUDER, Circuit Judge.

The plaintiff bank in these two cases became the holder of real estate mortgages given to secure long-term loans. At the times when the bank acquired these security interests, 1928 in the first case and 1925 in the second, Puerto Rico had an unusual provision of law relating to liens for real estate taxes. Section 315 of the Political Code provided:

" * * * The tax that is assessed for the current fiscal year, and for the three prior fiscal years, against each piece or parcel of real property, including any improvements that may be thereon, or that may be subsequently placed thereon, shall constitute the first lien thereon, and shall be prior to all other liens whatsoever on said property, whether the said liens attach before or after the lien of said taxes: * * *."

As the law then stood, this prior lien would lapse after a tax had been more than three years in arrears, which tended to bring about a rather prompt collection of taxes, by tax sales if necessary. Depressed economic conditions prompted the passage of the Act of July 16, 1936, which authorized the Treasurer of the Island, upon application by any taxpayer owing real estate taxes for 1934–1935 or preceding years, to defer the collection of such taxes and extend the time for payments thereon over a period of twenty years in equal annual installments. Section 5 of this Act reads:

"The amount of the deferred-tax receipts issued under this Act shall constitute a preferred lien on the property subject to the unpaid and deferred tax. This lien shall have preference and priority over any other lien which already burdens or may be hereafter constituted on said properties. The term of duration of this lien for taxes levied on real property, which is established by Section 315 of the Political Code, * * * is extended for a period of twenty (20) years and shall not be extinguished until the deferred taxes and the interest thereon have been totally paid; * * *."

In 1937 the bank instituted these suits to foreclose the mortgages above mentioned. Jurisdiction in the federal district court was based upon the Act of June 16, 1933, 48 Stat. 184, 12 U.S.C. § 632, 12 U.S.C.A. § 632. The People of Puerto Rico levied attachments on the mortgaged properties, to cover installments due on "extended" taxes. After decreeing foreclosure and sale to satisfy the claims of the plaintiff bank, the court, on motion of the bank, ordered the People of Puerto Rico to show cause why the attachments for extended taxes should not be cancelled. After hearing, the court decreed in each case that such attachments should be cancelled and "that the only lien for taxes in favor of the People of Puerto Rico which has priority to complainant's mortgage is for taxes for the current year and the three preceding fiscal years." These are the decrees now appealed from.

The District Court thought that the Act of 1936 was invalid as "a violation of the terms of the Organic Act which prohibits the Legislature from passing any law which would impair the obligation of contracts." 48 U.S.C. § 737, 48 U.S.C.A. § 737.

We believe that the Act is valid and that the attachments for extended taxes take priority over the mortgages held by the bank.

There has been no impairment of the obligation of contract. In each case the obligation of the debtor to pay off the mortgage note in the installments originally specified remains unimpaired, and the full interest of the mortgagor in the property remains pledged to the fulfillment of this obligation. But the mortgagor's interest was always subject to the paramount taxing power of the Territory. Baldwin v. Moroney, 173 Ind. 574, 583–584, 91 N.E. 3, 7, 30 L.R.A.,N.S., 761. A lien for taxes attaches to the land itself, irrespective of whatever subdivision of beneficial or security interests may exist therein.

Appellee concedes that its vested mortgage interest may, even by subsequent legislation, be subordinated to a lien for taxes levied on the land, where the lien is established in support of taxes imposed and accruing from and after the date of such legislation. Wabash E. Ry. Co. v. Commissioners, 134 Ill. 384, 25 N.E. 781, 10 L.R.A. 285; German Savings & Loan Society v. Ramish, 138 Cal. 120, 124, 125, 69 P. 89, 70 P. 1067; Murphy v. Beard, 138 Ind. 560, 38 N.E. 33; see Provident Institution for Savings v. Mayor and Aldermen of Jersey City, 113 U.S. 506, 514–516, 5 S.Ct. 612, 28 L.Ed. 1102; Note, 30 L.R.A.,N.S., 762. We decided nothing to the contrary in Domenech v. Lee, 1 Cir., 66 F.2d 31, which related to excise taxes, not taxes on real estate. It is contended, however, that the legislature cannot, to the prejudice of pre-existing mortgage interests, create a new tax lien or revive an expired one, in support of past-due taxes levied on the land. In our opinion the taxing power is not subject to this limitation. The needs of revenue are served by the collection of delinquent taxes as well as by the collection of current taxes.

The records in the cases at bar do not indicate what years are covered by the attachments for extended taxes involved in this appeal. If they were for the fiscal year 1934–1935, and perhaps also for the fiscal year 1933–1934, then at the time the taxes were extended the old prior liens given by Section 315 of the Political Code were still valid and subsisting. As to them, the legislature could without question say, as it did in the Act of 1936: "We might enforce these liens now in preference to all other outstanding interests, but to avoid oppressive tax sales in these hard times we shall give the taxpayer the option to apply for a twenty-year extension of the taxes so secured, in which case the liens instead of lapsing within three years shall be extended until the deferred taxes have been paid."

We think the Act of 1936 is equally valid as applied to extended taxes for years as to which the old three-year lien had already lapsed.

Let us assume that the taxpayer failed to pay the taxes assessed for the fiscal year 1931–1932. At the time those taxes accrued and for three years thereafter they constituted a lien on the mortgaged property superior to the lien of the bank. As a matter of indulgence, the tax collector refrained from enforcing the liens. As a matter of grace, the legislature prescribed that the People of Puerto Rico would not insist upon a preference over the outstanding mortgagee's interest for more than three years after the taxes became due. But the mortgagee, whose interest was at all times subordinate to the taxing power, had no vested right to a continuation of this indulgence and of this legislative grace. The Territory has made no contract not to change the lien provisions of the Political Code, Section 315.

Admittedly the legislature in 1930 (which was after the mortgages were executed) could have enacted that real estate taxes assessed for 1931–1932, and thereafter, should constitute a prior lien on the land, the lien to subsist, not for three years only, but for an indefinite time until the taxes are fully paid. Such a law could not have been successfully challenged, despite the fact that it would have extended the lien for future taxes to the disadvantage of mortgage interests acquired before its passage. We cannot see that it makes any constitutional difference whether the legislature extends the period of the lien before the taxes have accrued, or extends or revives the lien as against the mortgagee after the taxes have accrued. In either case there would come a time, in our assumed case of delinquency for 1931–1932, when the mortgagee would have been freed of the lien, had the law remained as it was when the mortgage was executed; but if, in one case, the legislature by a law passed subsequent to the execution of the mortgage could make the lien available to the Government after the three-year period, so it could in the other. In the one case the bank has not changed its position in reliance on a prospective lapse of the lien for 1931–1932 taxes; in the other, it has not changed its position in reliance upon an accrued lapse. It probably would not alter the result if it had, because the bank is not entitled to assume that the law will remain unchanged. In either case, the legislature is making a reasonable exercise of the taxing power to see to it that each parcel of land bears its fair proportion of the tax burden.

Viewing the matter from another standpoint, the conclusion we have reached is reinforced. The Act of 1936 speaks of extending past-due taxes. The legislature could have accomplished the same result if

it had enacted (1) that no further effort will be made to collect unpaid taxes for 1934–1935 and years previous, but (2) that for each of the next twenty years, over and above the annual levies imposed on all land, there shall be superadded a special tax equal to one twentieth of the past delinquencies, with interest. This being a new tax imposed and accruing after the passage of the legislation, the legislature to secure its collection might lawfully create a lien of indefinite duration superseding existing mortgage interests, provided the tax itself would be valid under the due-process clause.

■ There could be no doubt of the validity of such an additional tax. It would be levied only on land which in the past has not borne its proportionate share of the tax burden; this fact would justify the classification. Florida Central & P. R. Co. v. Reynolds, 183 U.S. 471, 22 S.Ct. 176, 46 L.Ed. 283; Seattle v. Kelleher, 195 U.S. 351, 25 S.Ct. 44, 49 L.Ed. 232. In the Reynolds case the court upheld a state statute passed in 1885 providing that if any railroad property was not assessed for taxes for the years 1879, 1880 and 1881, it should be the duty of the Comptroller "to cause the same * * * to be assessed for state and county taxes, and twenty per centum of the taxes so assessed for said years and now unpaid shall be collected at the same time the taxes for the year 1885 shall be assessed and collected, and each year thereafter an additional twenty per centum of said taxes shall be collected, at the same time and in the same manner as the taxes for such year are collected, until the whole amount of said unpaid taxes for the years 1879, 1880 and 1881 are paid." Laws Fla.1885, c. 3558. In the Kelleher case a street was opened up and a special assessment levied by the city. This assessment was held void. Later a parcel of land, benefited by the improvement, was sold, then mortgaged, then bought in by the plaintiff on foreclosure. Subsequently a statute was passed authorizing a new assessment upon the lands benefited. A "reassessment" was ordered by city ordinance. This assessment was held valid, it being no objection that it was levied "upon an executed consideration," nor that such assessment included items which under the earlier law were required to be paid for out of general taxation. The benefit had been received, and the land became subject to special assessment therefor under a future exercise of the taxing power. It did not matter that the present owner acquired his title after the earlier assessment had been held void and before the later enabling act was passed.[1]

■ Whether the legislature chooses to call the tax an extension of past-due taxes, or an additional levy predicated upon the fact that the land in question had in the past received the general benefit of governmental protection without having borne its share of the burden, is a mere matter of form, and certainly cannot be decisive of the validity of the prior lien established by the Act of 1936. The legislature has made a valid exercise of the taxing power, and the lien is incidental.

In each case:

The decree of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion; appellant recovers costs of appeal.

---

[1] The Court said, 195 U.S. at pages 359, 360, 25 S.Ct. at page 46, 49 L.Ed. 232: "The charge of planking on the general taxes was not a contract with the landowners, and no more prevented a special assessment being authorized for it later than silence of the laws at the same time as to how it should be paid for would have. In either case the legislature could do as it thought best. Of course, it does not matter that this is called a reassessment. A reassessment may be a new assessment. Whatever the legislature could authorize if it were ordering an assessment for the first time it equally could authorize, notwithstanding a previous invalid attempt to assess. * * *

"It is urged, however, that a different rule could be applied in favor of one who purchased the land under the circumstances stated above. But the attempt to liken taxation, whether general or special, to the enforcement of a vendor's lien, and thus to introduce the doctrine concerning bona fide purchasers for value, rests on a fallacy similar to that which we have mentioned above, which would deny the right to tax upon an executed consideration. A man cannot get rid of his liability to a tax by buying without notice."