DAIN MANUFACTURING COMPANY OF IOWA, Appellee, v. IOWA
STATE TAX COMMISSION, Appellant.

No. 46799.

532

MAY 7, 1946.

John M. Rankin, Attorney General, Jens Grothe, Special Assistant Attorney General, Henry W. Wormley, Special Assistant Attorney General for Iowa State Tax Commission, and Dickinson & Dickinson, of Des Moines, for appellant.

Pike, Sias & Butler, of Waterloo, and Jones & White, of Ottumwa, for appellee.

SMITH, J.—Defendant commission, having first appealed, will be referred to as appellant. The pertinent statutory provisions are found in chapter 329.4, and particularly in the following part of section 6943.102, Iowa Code, 1939:

"The following words, terms and phrases when used in this chapter shall have the meanings. ascribed to them in this section:

"1. 'Use' means and includes the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include processing, or the sale of that property in the regular course of business. Property used in 'processing' within the meaning of this subsection shall mean and include * * * (c) industrial materials and equipment, which are not *readily obtainable in Iowa,* and which are *directly used* in the actual fabricating, compounding, manufacturing or servicing of tangible personal property intended to be sold ultimately at retail." (Italics supplied.)

Code section 6943.103 imposes an excise tax of two per cent of its purchase price upon the use in Iowa of tangible personal property purchased for such use. Section 6943.104 provides various exemptions not necessary to be set out here.

The facts are all stipulated. There are numerous items of property involved, purchased by appellee outside the state at various times and under varying conditions and circumstances which concern their purchase and use. It will save time to discuss the facts of each item as we proceed.

I. We start with the proposition that the burden of proof was on appellee in seeking relief from the assessment. Sections 6943.086, 6943.116, Iowa Code, 1939. But we have here a question of statutory construction rather than of fact. Appellee invokes the rule that in the interpretation of taxing statutes doubtful language is to be resolved in favor of the taxpayer and against the taxing body. Appellant urges that this rule is reversed in construing statutory exceptions and tax exemptions. Both propositions are too well established to require extensive citation of authority. See Palmer v. State Board of Assessment and Review, 226 Iowa 92, 94, 283 N. W. 415.

534

We are agreed, however, that the result here does not depend upon whether we adopt a liberal or strict rule of construction. In either case the conclusions hereinafter announced must be reached.

II. The purpose of the use-tax law is indirectly to tax sales that cannot be directly taxed under the Iowa sales-tax law. Since sales of property designed for use in Iowa cannot be taxed if consummated outside the state, our legislature has resorted to the plan (not uncommon in recent years) of taxing the use of such property in the state. The tax is on the use but it presupposes a prior sale. The tax serves the double purpose of producing revenue that otherwise might not be available and of furnishing some measure of protection to Iowa dealers from competition with outside vendors not subject to liability for sales tax. See discussion in Henneford v. Silas Mason Co., 300 U. S. 577, 581, 57 S. Ct. 524, 526, 81 L. Ed. 814, quoted in Zoller Brewing Co. v. State Tax Commission, 232 Iowa 1104, 1106, 5 N. W. 2d 643, 6 N. W. 2d 843. The law is at the same time apparently drawn with the purpose of avoiding double taxation. See Code sections 6943.104 (subsections 1 and 4) and 6943.125. Section 6943.102, subsection 1(c) also seems designed for a somewhat similar purpose, as it expressly excludes use by resale and use by processing for the production of property for ultimate sale at retail, in either of which cases a sales tax would probably result.

III. The phrase "not readily obtainable in Iowa" has an innocent but deceptive appearance of simplicity. The various items here involved illustrate the difficulties that arise in applying it to the varied transactions of present-day business. Let us take first those items held by the trial court to be *not* subject to the tax. For convenience of reference and identification we shall use the item numbers as they appear in the stipulation of facts.

Items 8(a) and 8(b) refer to purchases outside the state of material such as was not then physically present and subject to purchase in the state. However, as to 8(a) it is stipulated there was a "person, firm or corporation" in Iowa that could have made a *binding contract* to sell and deliver the item to appellee

by ordering it from sources outside Iowa; and as to 8(b), that there was one who could have accepted an *order* for the item, *subject to approval outside the state,* for sale and delivery to appellee.

Appellant contends such items were therefore "readily obtainable in Iowa." It cites Continental Supply Co. v. People, 54 Wyo. 185, 88 P. 2d 488, 129 A. L. R. 217, and some other Wyoming Supreme Court decisions. However, the corresponding language of the Wyoming use-tax law is materially different from our own. It is placed in the *exemption* statute and expressly exempts "Machinery * * * not generally stocked in Wyoming for sale" or *"not promptly purchasable in Wyoming from or through a regularly established Wyoming individual, firm or agency registered as a retailer under this act."* (Italics supplied.) [L. 1937, chapter 118, section 4.]

The difference is obvious and it relates directly to the point in controversy here. There is not merely the difference between "readily obtainable" and "promptly purchasable" but there is the further qualification in the Wyoming law, not found in our own: "from or *through* a regularly established Wyoming individual * * *' registered as a retailer under this act." This latter language is broad enough to narrow the exemption materially and to leave taxable the use of items not directly or readily obtainable in the state but "promptly purchasable" from sources outside, on order through a regular dealer in the state.

We cannot read these words into our statute unless they can reasonably be implied from the phrase "readily obtainable in Iowa." Appellant contends these words mean that such industrial materials and equipment are "not readily obtainable in Iowa" *only* when they are not "being sold by Iowa vendors subject to the Iowa sales tax." This argument is based on the theory that because the sales tax and use tax are complementary every sale must be taxed under one or the other.

But if that were true, section 6943.102, paragraph 1, would be entirely superfluous. Sections 6943.103 and 6943.104, paragraph 1, would serve the purpose: the former imposing the tax generally upon all uses and the latter exempting the use of

property the sale of which had been already taxed under the sales-tax law.

Manifestly section 6943.102, paragraph 1, is intended for another purpose, viz., to exclude two kinds of uses, both of which would contribute to future taxable transactions, either by direct resale "in the regular course of business" or by "processing" to produce or prepare property (or service) for future sale at retail.

Appellant argues further that to uphold the trial court's interpretation of the words "not readily obtainable in Iowa" (in the respect here under consideration) would "bring ruin to vendors in Iowa." The consequent loss of revenue is also stressed. These are considerations for the legislature to take into account. They should not control either the court or appellant in construing the language used by the legislature.

When the statute was young (October 1937) appellant interpreted "readily obtainable in Iowa" to mean "kept in Iowa for sale or manufactured in Iowa for sale as distinguished from being obtainable by giving an order to an agent in Iowa for delivery of the same from some point outside the State of Iowa."

Some years later (1942), influenced perhaps by the considerations now urged, a new ruling was promulgated:

"The commission holds that, where industrial materials and equipment of the same general classification are offered for sale in Iowa, such material and equipment cannot be considered 'not readily obtainable in Iowa' and therefore would not be entitled to use tax exemption when purchased in interstate commerce from points outside the state."

Insofar as these orders conflict we think the earlier interpretation more nearly expressed the legislative intent. Of course, neither is binding except so far as its reason and logic demonstrate its correctness.

The language of the stipulation is not broad enough to permit appellant to claim the benefit of the Wyoming rule, even if the language of our statute would justify its adoption. There is no showing here that the "person, firm or corporation" which stood ready to furnish an order was a regular dealer in goods of a comparable kind, or whether the particular items pur-

chased by appellee were temporarily out of stock or were of such character as not to be carried regularly in stock.

Our holding here is, of course, confined only to the facts as stipulated. A retailer might be temporarily out of an article just when the customer wanted it but still be in a position readily to furnish it if desired. We need not meet that question here. It is sufficient to say we think the trial court correctly held no use tax was assessable on account of items 8(a) and 8(b).

IV. Appellee was likewise held not liable for use tax on items 8(d) and 8(e). It was stipulated as to both that there were other items then physically present in Iowa, subject to purchase by appellee, and usable for the same purpose, but as to 8(d) not of equal quality and as to 8(e) not of equal tolerance or precision standard.

Appellant merely argues as to these that quality and tolerance or precision standards are matters of opinion and that liability or nonliability for use tax cannot rest upon the purchaser's individual opinion or preference. We agree with this statement to the extent of conceding that the superiority must be real and not fictitious or mere matter of opinion. And to this extent we disagree with the reasoning of the trial court.

However, the *fact* of superiority here is stipulated. It is not a mere matter of opinion, and for that reason we think the result reached by the trial court is right. We think that under the statute an article is "not readily obtainable in Iowa" unless it can be procured in kind and quality fairly equivalent to the item purchased outside. The purchaser's whims or opinion or pretense is not enough. But if the fact appears by concession, as here, or if proof fairly establishes that there is an actual, material difference between the domestic and the foreign article, the purchaser of the latter is not liable for use tax. Quality and precision standards are too important to be disregarded.

V. Two other items, 9 and 10, were held to be nontaxable. They were conceded to be "not readily obtainable in Iowa," but appellant contended they were not (within the meaning of the statute) "directly used in actual fabricating, compounding, manufacturing or servicing of tangible personal property intended to be sold ultimately at retail."

It was conceded that item 9 was "generally" but not "entirely" so used; and that item 10 was not directly attached to or a component part of the machine, tool, or equipment "directly used" in such "fabricating, compounding, manufacturing or servicing" and did not "come in immediate physical contact with the manufactured article" but was "necessary to keep the machine, tool or equipment in condition to perform the operation upon the product being processed."

1. We agree with the decision as to item 9. The article is conceded to have been "generally" used in producing or preparing property intended for retail sale. .That seems sufficient under the statute. An article may be *directly*, without being *entirely*, used for a given purpose.

2. As to item 10 we disagree with the trial court. The article is described as a "drill grinding machine." We interpret the stipulation to mean that it was used to service the machinery or equipment that was being "directly" used in the actual act of processing property intended for ultimate sale at retail. It did not come in physical contact with the property that was being made salable or, we assume, take any part in the actual processing of that property. The trial court expresses the opinion that an item "used in order to keep a machine in condition to do the actual work of processing, is directly used in such processing." That reasoning ignores entirely the word "directly." It enlarges the statutory definition of property used in "processing" beyond the reasonable intendment of its language.

VI. We next consider the items the trial court held to be liable to the tax. The first is item 8(c), described in the stipulation as being "purchased in substantial quantities at one time by the plaintiff." It is further stipulated "that there was physically present in Iowa some of such items, but that there was not a sufficient quantity of such items physically present in Iowa, and subject to purchase by the plaintiff at one time."

We are not told what the quantity obtainable in Iowa was insufficient *for*, nor does the stipulation show what quantity was available in Iowa nor how much, if any, it fell short of either appellant's then-existing needs or desires. Various ques-

tions might arise if these questions were answered. Surely the questions of quantity might become an element to be considered.

But it was not shown to have been. Before an article, readily obtainable in Iowa in some quantity, may be purchased outside in larger quantity, tax free, there must be some showing of good-faith present need for the larger quantity, either for immediate use or for a reasonable protection against future emergent need. That fact is not shown here. Purchase of the larger quantity cannot be made merely to avoid use tax.

VII. We may dispose of items 8(f) and 8(i) together. Both were physically present in Iowa and subject to purchase by appellee. As to 8(f), the price, if purchased within the state, was greater by more than two per cent than the price for which it was purchased outside. As to 8(i) appellee, by purchasing outside the state, "procured certain necessary expert service, which service could not have been procured had the plaintiff purchased such item within the State of Iowa."

The trial court rightly held these items subject to the use tax. Neither a saving in price nor the receiving of some additional value (such as necessary expert service) with the purchase if made outside the state makes the article any less "readily obtainable in Iowa." If a purchaser wishes to avail himself of these advantages by purchasing outside the state he must reconcile himself to the payment of use tax.

VIII. As to items 8(g) and 8(h) we hold the trial court reached the correct result under the stipulation. Both were physically present and purchasable in Iowa. Item 8(g) was necessary to the carrying on of appellee's "normal manufacturing processes" but its location in Iowa was such that appellee could not procure it from there as quickly as from outside the state. Appellee did not have it on hand, "the unforeseen emergency arising through no fault of the plaintiff." The availability of item 8(h) from sources in Iowa was unknown to appellee.

These assignments demand a construction of the word "readily" in the phrase "readily obtainable." Readily obtainable by whom? By the particular purchaser? We think it cannot be so limited. We find no help from precedent. The term

must, we think, be construed to relate to the trade or business or industry in which the particular article is used. If readily obtainable generally by those engaged in the particular industry, the exigency or knowledge of the particular purchaser is not material. The immediacy of his need or his lack of knowledge is his misfortune. He is not relieved from liability for the use tax if he purchase from outside the state.

We realize the difficulty of administration involved. But that is inherent in dealing with the indefinite word "readily." Just how readily obtainable the item must be to make its use taxable under the law in a given case must depend upon a reasonable appraisal of the facts involved. We think the decision here was correct as to these items.

IX. The trial court correctly ruled that freight charges for bringing goods to Iowa for use after their purchase outside the state could not be included in computing the use tax. Code section 6943.103 provides that the tax shall be two per cent of the "purchase price." Section 6943.102, paragraph 3, defines purchase price as "the total amount for which tangible personal property is sold * * *." In each the reference is clearly to the transaction between vendor and vendee. The freight charges are no part of that transaction.

The tax is not to be computed upon the *total cost* to the purchaser but upon the *purchase price* he pays the vendor. The purchase price depends on the contract between the parties. The contract might be such that transportation and delivery charges would be included but that is not the case under this stipulation.

There is no analogy, as argued by appellant, between the situation here and one in which the Iowa dealer includes in the amount of his selling price (upon which sales tax is computed) the freight charges and other expenses incident to being able to sell the article in Iowa.

The use tax presupposes a contract of sale not taxable because made outside the state. The bringing of the property to Iowa is no part of the transaction.

Appellant cites Whitehill Sand & Gravel Co. v. State Tax Comm., 106 Utah 469, 472, 150 P. 2d 370, 371. Insofar as it is in point it is an authority against appellant's contention here.

It involved a deficiency sales-tax assessment levied to include transportation charges as a part of the purchase price. The court said:

"It is clear that if the deficiency here assessed is made up of a percentage of the transportation charges incurred and paid by the purchaser after he took title rather than of items included in the purchase price to him, the assessment must be set aside."

The opinion quotes from Bloxom v. Henneford, 193 Wash. 540, 76 P. 2d 586, 587, language to the same effect. It also cites Ford J. Twaits Co. v. Utah State Tax Comm., 106 Utah 343, 348, 148 P. 2d 343, 345. That case was one involving use tax under the Utah statute. It held that freight charges were not a part of the sale price, saying:

"How then can the freight charge be a part of the sale price? It is an entirely separate transaction, the sale being complete before shipment ever occurred."

Most of the questions presented on this appeal are of first impression both in Iowa and elsewhere. We have kept in mind the duty of so interpreting the statute as to make it practically workable, so far as possible, without doing violence to the other rules of construction already discussed.

The decree will be modified as indicated in Division V(2) of this opinion and as so modified will be affirmed, appellant to pay two thirds and appellee one third of costs on appeal.— Modified and affirmed on defendant's appeal; affirmed on plaintiff's appeal.

BLISS, C. J., and OLIVER, HALE, MILLER, GARFIELD, MANTZ, and MULRONEY, JJ., concur.

WENNERSTRUM, J., not sitting.