GENERAL EXPRESSWAYS, INC., Hall's, Inc., Little Audrey's Freight Lines, Midwest Emery Freight System, Inc., Navajo Freight Lines, Inc., Pre-Fab Transit Company, Transamerican Freight Lines, Inc., Appellees,

v.

IOWA RECIPROCITY BOARD, Robert C. Barry, Bernard J. Martin and William F. Sueppel, Members of the Iowa Reciprocity Board, and Mrs. Joy Boyce Fitzgerald, Executive Secretary of said Board, Appellants,

v.

BILYEU REFRIGERATED TRANSPORT CORP., Bilyeu Transport, Inc., Safeway Truck Line, Inc., Wilson Brothers Transport, Inc., Producers Transport, Inc., Kroblin Refrigerated Xpress, Inc., Curtis, Inc., Intervenors-Appellees.

No. 53254.

Supreme Court of Iowa.

Dec. 10, 1968.

Richard C. Turner, Atty. Gen., Don R. Bennett, Special Asst. Atty. Gen., and Charles O. Campbell, Asst. Atty. Gen., for appellants.

Jake More, Harlan, and Howard M. Downs, San Francisco, Cal., for appellees and intervenors-appellees.

LARSON, Justice.

On August 19, 1965, the original plaintiffs commenced their action for declaratory relief against the defendants, the Iowa Reciprocity Board and its members, alleging that chapter 302 of the Acts of the 61st General Assembly (hereinafter referred to as chapter 302) which amended chapter 326 of the 1962 Code was unconstitutional, that it was contrary to the provisions of the Uniform Vehicle Registration Proration and Reciprocity Agreement (hereinafter referred to as the uniform compact) between this state and other states, that it amounted to the impairment of the obligation of an interstate compact, and that they as proper parties were entitled to an injunction restraining the Iowa Reciprocity Board (hereinafter referred to as the board) from coercing the payment of disputed license fees by stopping plaintiffs' and intervenors' trucks and arresting their drivers. Although some of the original plaintiffs withdrew and several trucking firms intervened as party plaintiffs, we shall designate them only as plaintiffs.

Preliminary injunctions were issued in September and October, 1965, enjoining the board from efforts to collect the disputed fees, and bonds were furnished.

On February 23, 1968, after issues were joined, defendants moved for an adjudication of law points under rule 105, R.C.P., and pursuant to hearing thereon on March 27, 1968, the trial court entered its findings, conclusions, and judgment on April 23, 1968. It held that chapter 302 constituted an impairment of the obligation of a contract in violation of Article I, Section 10, of the United States Constitution, and its counterpart, Article I, Section 21, of the Iowa Constitution, and insofar as it may require the apportionment fraction asserted by the board and permits the board to redetermine to 100 percent the fees of trucks owned by Iowa residents or trucks

base-plated in Iowa, it is void. On May 13, 1968, the defendants appealed, and we resolved doubts as to the court's judgment being final by granting their right to take an interlocutory appeal on May 15, 1968.

Propositions relied upon for reversal are (1) that chapter 302, when read in light of various provisions of the Uniform Vehicle Registration Proration and Reciprocity Agreement, is not in conflict with that agreement; (2) that the plaintiffs lacked standing to question the validity of chapter 302 in that they are not parties to the compact, nor are they third party beneficiaries to that agreement; (3) that chapter 302, which amended chapter 326 of the 1962 Code, is valid, even assuming that the compact mile formula and the 100 percent redetermination provision found in the amending legislation conflict with the proration formula provisions of the compact, and the trial court erred in finding impairment of the compact obligation; (4) that the last paragraph of section 4 of chapter 302, which increased retroactive to January 1, 1965, the motor vehicle registration fees due Iowa from the plaintiffs, is not in violation of the 14th amendment to the United States Constitution and does not constitute invalid retroactive legislation. Consideration of these issues will not be in that order, and propositions (1) and (3) will be considered together.

At this point a statement of facts set forth in the pleadings will be helpful.

Plaintiffs' petition reflects that they are common carriers engaged in interstate commerce traveling through Iowa, and that they each own or lease a fleet of two or more commercial vehicles. It alleges plaintiffs have paid the State of Iowa registration fees which were due and owing for the year 1965 prior to the effective date of the 61st General Assembly amendment to chapter 326 of the Code. It challenges this Act as being an impairment of a prior obligation of this state in violation of the federal and state constitutions and of the due process clause, because it

was made retroactive to the beginning of the year 1965; as imposing an undue burden on interstate commerce in violation of Article I, Section 8, of the federal constitution; as a denial of equal protection because it discriminates against interstate carriers; as an attempt to delegate legislative and judicial powers to the board; and as being so ambiguous and uncertain as to be unenforceable. We note here that only the first two issues were argued to and considered by the trial court in ruling on defendants' motion for adjudication of law points. We shall, therefore, confine this opinion to those issues.

In their answer defendants admitted that the State of Iowa entered into a valid and binding contract when it became a party to the compact, but denied that chapter 326 as amended violated any federal or state constitutional provision. Defendants counterclaimed for fees alleged due by virtue of the 1965 amendments, and alleged in plaintiffs' 1965 vehicle registration proration application they agreed in paragraph (e) that "if the Iowa legislature enacts legislation providing for a different method of determining the prorate fees due Iowa for the year 1965 registration year, and a redetermination of prorate fees due from applicant for 1965 registrations is made, * * applicant will remit all additional fees owed to Iowa * * *."

Plaintiffs' reply admitted they had submitted the 1965 applications containing paragraph (e), but denied it was valid or had any effect because it was obtained by duress and was contingent upon events not within the control of either party.

Perhaps by way of background we should note briefly the prior legislation and operation of the board pursuant thereto until this action was commenced.

In 1959 Iowa enacted chapter 250, Acts of the 58th General Assembly. This act amended chapter 321 of the Code, which was later amended and codified as chapter 326 of the 1962 Code of Iowa. This forerunner to the law being challenged in the

instant case was enacted to allow Iowa to become a party to the uniform compact. It authorized the Iowa reciprocity board to make agreements with other states whereby Iowa and other participating states would agree to charge only a prorated truck registration fee. Under the compact nonresidents would be exempt from paying the usual motor vehicle registration fees to Iowa for use of Iowa highways, but could not escape all fees formerly waived under straight reciprocity. In an attempt to obtain a fair share of such license fees the Iowa General Assembly enacted chapter 250, above referred to, which limited the authority of the board by provisions set out therein appearing in chapter 326 of the 1962 Code. Pursuant to that statutory authority, the Iowa board signed the uniform compact for the State of Iowa in 1959 and obtained approval of a specific Iowa appendix thereto attached. Iowa's participation became effective with the 1960 registration year.

Chapter 326, Code of 1962, in section 326.2, directed that such agreements could provide "with respect to resident or nonresident owners of fleets of two or more (commercial) vehicles which are engaged in interstate commerce, * * * that the registrations of such fleets can be apportioned between this state and other states in which such fleets operate." The formula to be used by the board in arriving at Iowa's share of the prorate registration fee was then set out as follows:

"The percentage of miles such fleets operate in this state as related to the total miles such fleets operate in all states, shall be used by the reciprocity board to determine the amount of registration computed on a dollar basis * * *. The apportioned registration fee computed on a dollar basis is equal to the amount obtained by applying the proportion of in-state fleet miles to total fleet miles to the fees which would otherwise be required for total fleet registration in this state and shall mean a percentage of the annual fee on each vehicle of an apportioned fleet, * * *."

The uniform compact, in section 50, provided a like formula for prorating registration fees, but the compact also provided in section 52 that a different formula could be used if agreed to by the other members of the compact.

Prior to Consolidated Freightways Corp. of Delaware v. Nicholas, 258 Iowa 115, 137 N.W.2d 900, the Iowa board construed the language in the statutory formula, "all states" and "total fleet miles", to mean "all apportioning states" and "total fleet miles in apportioning states," or, in other words, permitted the use of compact miles rather than over-all miles in computing the fee due this state. The board took the position that the statute provided for a determination of truck license fees by a formula that resulted in the equivalent of one full fee being divided among Iowa and those states with which it had agreed to prorate registration fees. This, it contends, was the intent and purpose of the Iowa appendix agreed to by the other contracting states when Iowa became a party to the uniform compact in 1960. We shall consider that contention in Division II infra.

The board also took the position that it was authorized to redetermine fees for Iowa resident or Iowa base-plated truckers if the percentages traveled in the compact states by the interstate motor carriers when added together did not equal 100 percent. This so-called 100 percent redetermination principle meant that Iowa would pick up any percentages traveled in states not a party to the compact and use these percentages to enlarge the fee due Iowa. This resulted in a 100 percent apportionment of miles by Iowa residents or base-plated truckers among the compact states so that the equivalent of one full fee was divided among Iowa and those states which had agreed to prorate registration fees. The practical effect of the use of compact miles and 100 percent redetermination was to increase substantially the fees due Iowa from base-plated truckers and Iowa residents, and had little or no relationship to

the total miles such fleets traveled throughout the country.

In Consolidated Freightways Corp., etc. v. Nicholas, supra, this court held that chapter 326 did not authorize the board to enter into any agreement which permitted the use of compact miles or the use of the 100 percent redetermination principle, but required the board to use the miles traveled in all states as the apportionment denominator.

In 1965 chapter 302, Acts of the 61st General Assembly, amended chapter 326 to provide a proration formula consistent with board interpretation, that is, section 326.2 was amended to provide for use of the compact mile formula and for the use of the 100 percent redetermination principle. Thus, appellants argue there is now no conflict between the formula prescribed in the Iowa law and that permitted Iowa by the uniform compact and the appendix thereto. Although we do not agree, we find it unnecessary to find this Act void, only ineffective as to plaintiffs until the board alters or cancels the contract pursuant to its provisions.

■ I. The trial court construed chapter 302, Acts of the 61st General Assembly, as an impairment of the obligation of contract which is forbidden by Article I, Section 21, of the Iowa Constitution. We are unable to so construe that amendment. Although it is true valid contracts of the State cannot be impaired by the legislature, and we agree with the trial court that the uniform compact is a valid state contract, we do not interpret this legislation as an attempt to unilaterally alter the terms of the compact previously entered into by the board pursuant to the authority provided in chapter 326 in 1959. It is significant that section 326.2 of that Code did not incorporate the terms of the uniform compact, nor did the 61st General Assembly in chapter 302 attempt to specifically alter the terms of that compact. Certainly, section 326.2 as amended is not the text of the uniform compact itself, nor was it such when Iowa joined the compact in 1959. However, that does not mean the uniform compact was not a valid and binding state contract.

■ Appellants' contention that it was not a binding state contract when executed in 1959 cannot be sustained. True, there was no ratification of the uniform compact by the legislature, but in our view that is not a vital requirement. Such an agreement, when properly executed by a board, commission, or party duly authorized to do so by the legislature, does not require other legislative approval to make it valid. See Interstate Motor Freight System v. Bowers, 164 Ohio St. 122, 128 N.E.2d 97. Also see The Law and Use of Interstate Compacts (1961) by Zimmerman and Wendell, page 8. Therein it is stated: "* * * motor vehicle administrators of the western states have been authorized by the statutes of their respective states to enter into tax proration agreements in terms sufficiently spelled out in the statutes themselves so that the agreements are actually compacts even though their precise texts do not appear in the statute books." The test of validity, it is said, "is whether he [the administrator] has been empowered to bind his jurisdiction and whether the specific terms of his offer for an agreement are those which he had been directed or authorized to make by the empowering statute." There is no contention that the board here entered the uniform compact without due authority granted by chapter 326, and we recognized the extent of that authority and direction in Consolidated Freightways Corp., etc. v. Nicholas, supra, 258 Iowa 115, 137 N.W.2d 900.

■ We conclude the uniform compact herein was more than a mere administrative agreement and did constitute a valid and binding contract of the State of Iowa. In so holding, we are aware of defendants' contention that, because Congress has not approved this compact, the same is void. It is well settled that the constitutionality of interstate compacts in this regard is tested by whether the compact is a combination tending to increase the politi-

cal power of the state which may encroach upon or interfere with the supremacy of the United States. Virginia v. Tennessee, 148 U.S. 503, 519, 13 S.Ct. 728, 37 L.Ed. 537; Wharton v. Wise, 153 U.S. 155, 14 S.Ct. 783, 38 L.Ed. 669; Louisiana v. Texas, 176 U.S. 1, 16–18, 20 S.Ct. 251, 44 L. Ed. 347; Bode v. Barrett, 412 Ill. 204, 106 N.E.2d 521, 536, affirmed 344 U.S. 583, 73 S.Ct. 468, 97 L.Ed. 567 (1953); McHenry County v. Brady, 37 N.D. 59, 163 N.W. 540, 544. As pointed out in Bode, supra, this being a purely fiscal interstate agreement which was intended to encourage rather than restrain commerce among the states, it is not the type of interstate contract which requires Congressional consent. As bearing on this matter, also see State ex rel. Dyer v. Sims, 341 U.S. 22, 28, 71 S.Ct. 557, 95 L.Ed. 713 (1951).

Section 326.2, prior to the 61st General Assembly legislation, granted the board authority to make reciprocity agreements with duly authorized representatives of other governmental units. The second paragraph of the section states: "Notwithstanding any provisions of Iowa statutes to the contrary or inconsistent herewith, such agreements may provide with respect to resident or nonresident owners of fleets * * * that the registrations of such fleets can be apportioned between this state and other states in which such fleets operate." The new legislation deleted the words "other states in which such fleets operate" and inserted in lieu thereof "the other states a party to such agreements." The third paragraph was substantially changed to set out how the apportionment should be made and provided that if the composite percent paid by the Iowa resident or a nonresident who base-plated in Iowa "is less than one hundred percent percentagewise, the Iowa reciprocity board may redetermine the registration fees due the state of Iowa to bring the composite percent to one hundred percent percentagewise."

■ Section 326.2, both before and after the amendment, appears to have done no more than authorize and direct the board

to seek and secure truck license proration agreements with other states or government units. Limitations on this delegated power and authority were recognized and pointed out in Consolidated Freightways Corp., etc. v. Nicholas, supra, and it appears changes in these limitations were the subject of the new legislation. Chapter 302 obviously resulted from an attempt by the board to liberalize its authority to act in this field. At least, the new legislation changed the limitation and announced a different proration formula, for the board to follow thereafter. Appellees contend this change in authorization or direction necessarily interfered with the obligations of an existing contract and was void, but we are satisfied this legislation did no more than direct the board to use the new formula in future compacts and to seek proper modification or cancellation of existing agreements which did not permit the use of the new formula. Under the record before us the board had not obtained subsequent approval of the change by the other compact states to permit Iowa to apportion registrations on the basis of compact miles and a 100 percent redetermination right as directed by the Act. Neither does it appear the board had given notice of cancellation pursuant to section 91 of the compact, which provides: "This agreement shall continue in full force thereafter until cancelled or revoked by the official or officials of any contracting State authorized to enter into this agreement, upon 30 days notice to the corresponding officials of the other contracting States."

In this view it would appear the provisions of section 326.2 as amended and the provisions of the uniform compact are not necessarily in conflict, and both may stand. The trial court had this in mind when it held the new formula and other directives to the board are not effective as to the rights and obligations of the other compact states, nor as to the parties operating under the compact provisions, until that compact is properly modified or cancelled pursuant to its provisions.

■ Although there may be words in this Act which would lead to the conclusion that the terms of this compact or agreement between Iowa and other states were specifically modified, we find therein sufficient language to indicate a legislative intention to authorize and direct future board action, rather than to effect a unilateral change of the terms of existing compacts or agreements with other government agencies. We believe the second paragraph was a direction to the board to seek, by appendix or otherwise, permission of other members of the uniform compact to prorate on a compact mile basis and redetermine license fees. By implication the alternative was cancellation, but in any event we hold it did not alter the compact per se. In that view the Act was not violative of the alleged constitutional restrictions, federal or state.

■ It is a fundamental rule of statutory construction that where a statute is fairly open to two constructions, one of which will render it constitutional and the other unconstitutional or of doubtful constitutionality, the construction by which it may be upheld will be adopted. Kruidenier v. McCulloch, 258 Iowa 1121, 1133, 142 N. W.2d 355, 362; Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 527, 111 N.W.2d 317, 323, and citations; 16 C.J.S. Constitutional Law § 98b, pages 375, 376.

■ Courts, therefore, have been hesitant to declare statutes void which were in apparent conflict with interstate compacts where there were reasonable grounds for avoiding that result.

In Interstate Motor Freight System v. Bowers, supra, a subsequent statute which likewise broadened the authority of the board was challenged as being in conflict with a 1937 reciprocity agreement. The court found no conflict between the applicable provisions of the statute and compact, reconciled them, and refused to declare the act unconstitutional. It found no notice of cancellation of the 1937 agreement and concluded that, insofar as the other party to the agreement was concerned, Ohio was operating under that agreement.

In Olin v. Kitzmiller, 259 U.S. 260, 42 S.Ct. 510, 66 L.Ed. 930, a subsequent Oregon statute which restricted fishing licenses to citizens only was alleged to be in conflict with an Oregon-Washington interstate compact which was less restrictive. The court there construed the compact so as not to conflict with the statute and upheld the statute's constitutionality.

Only where there is a direct conflict which cannot be resolved have the courts struck down subsequent legislation. See Green v. Biddle, 8 Wheat. 1, 5 L.Ed. 547; Delaware River Joint Toll Bridge Comm., etc. v. Colburn, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287.

We agree with the trial court that the provisions of the uniform compact for termination, amendment or alteration, are specific, that under this record they were not complied with by the board or the State pursuant to the new legislation, and that until such is done the terms of the uniform compact remain in full force and effect.

II. In holding chapter 302 void insofar as it purports to require that compact miles be used in the denominator of the apportionment fraction, and insofar as it allows the board to redetermine to 100 percent the fees of trucks owned by Iowa residents or trucks base-plated in Iowa, the trial court decreed the only fee which may be assessed by defendants is an apportioned registration fee computed on the total miles formula of the uniform compact. As stated in Division I, we do not find the Act void, but consider those directives ineffective until the board obtains approval of such a change in the uniform compact or cancels it.

Appellants contend that the terms of the uniform compact do not conflict with the requirements set out in chapter 302, that it permits the use of the compact mile formula and the 100 percent redetermination

principle or any other formula the legislature may enact. They contend paragraph 9 of the Iowa appendix gives Iowa the right to use the compact mile formula and to use the 100 percent redetermination principle, and that section 52 of the compact permits the State to use any formula which the law then requires or which may be enacted by a subsequent legislature. It is their position that the appendix and section 52 of the compact permitted such legislative changes, and that when chapter 302 was enacted, the legislature merely ratified the provisions of the uniform compact and permitted Iowa to use the compact rule formula and the redetermination principle. We cannot agree.

We first consider the contention that appendix paragraph 9 gave to Iowa the right to use the compact mile formula.

When the Iowa board, pursuant to authority granted it in chapter 326 of the Iowa Code, in 1959 entered into an already-existing agreement with fourteen other states, it on behalf of this state subscribed to all terms of the compact, including state appendices attached thereto.

Section 1(a) of this agreement recites its purpose as an agreement to allow a contracting state to permit owners of fleets of commercial vehicles to prorate the registration of the vehicles in each state in which the fleets operate. Section 50 provides that a fleet owner "may register the vehicles of said fleet in any contracting State by paying to said State total registration fees in an amount equal to that obtained by applying the proration of in-state fleet miles divided by the total fleet miles to the total fees which would otherwise be required for regular registration * * *." Section 52 defines total fleet miles as follows:

"Total fleet miles, with respect to each contracting State, shall mean the total miles operated by the fleet (1) in such State, (2) in all other contracting States, (3) in other States having proportionate registration provisions, (4) in States with which such contracting State has reciprocity, and (5) in such other States as the administrator determines should be included under the circumstance in order to protect or promote the interest of his state; *except that in States having laws requiring proration on the basis of a different determination of total fleet miles, total fleet miles shall be determined on such basis.*" (Emphasis supplied.)

When Iowa became a party to this agreement, the other member states accepted and approved the "restrictions, limitations or conditions" set forth in its appendix. Iowa's appendix in paragraph 9 under this heading states: "9. Notwithstanding any provisions of the Agreement or the appendices to the contrary or inconsistent herewith, the privileges extended therein shall be granted only to a fleet owner that has fully apportioned its registrations in a State or States which permit proration of registration and weight fees."

Appellants maintain the effect of this provision, when accepted by the other states, was to grant Iowa the right to use compact miles rather than total fleet miles in figuring the proportion due this state, and to redetermine to 100 percent the fees of trucks owned by Iowa residents or trucks base-plated in Iowa. Appellees believe appellants claim too much for this paragraph. They argue that paragraph 9 was intended and so accepted by the other states as only allowing redetermination by the board if the trucker does not pay a fully apportioned fee as assessed in the other compact states, a view we seem to have adopted in Consolidated Freightways Corp., etc. v. Nicholas, supra, 258 Iowa 115, 137 N.W.2d 900, and that it does not permit the use of compact miles or the use of the alleged one hundred percent redetermination principle.

Paragraph 9 of the appendix does not state that a fleet owner to be fully apportioned must pay to any state, or to all states in a compact, one hundred percent of the registration fee for each vehicle in

his fleet. It only demands that the registration requirement of each state permitting proration be met. How this is to be done is not clear. Under the existing law at the time this appendix was approved, a fleet owner could be fully apportioned in Iowa when he prorated his fees on a total fleet mile basis. Most proration states still so provide. It would thus seem that provision required no more than that a fleet owner pay the fees required by other prorating states in order to be considered fully apportioned therein and be entitled to the privileges extended by Iowa. This construction is supported by paragraph 8 of that appendix, which states that "total fleet miles shall mean all miles traveled by the commercial vehicles included in a fleet which is prorated pursuant to this Agreement."

 In other words, paragraph 9 merely says that the privilege of prorating in Iowa will only be granted to a fleet owner who has met his obligations to all other contracting states. No formula for prorating is set out by this section. As used therein, to be "fully apportioned" means that a fleet owner has paid each state allowing proration the fee to which that state is entitled, based on the apportionment fraction in effect for that state. In the absence of being "fully apportioned," Iowa reserves the right to deny the fleet owner the privileges of proration in Iowa as granted by the compact.

 In any event, we are unable to find in this appendix any authority for the Iowa board to unilaterally use the compact mile formula or to collect an additional amount from the fleet owner representing the difference in the percentage required and paid other compact states and 100 percent of one full license fee.

The South Dakota appendix provides: "Total fleet miles * * * shall mean the total miles operated by the fleet in all states which are party to the Compact." It seems to us if that had been the intent of the Iowa appendix it could have been expressed as simply and clearly as that of the South Dakota appendix.

Conceding the meaning of paragraph 9 is not clear, appellants maintain an administrative interpretation has been given to the provision and they were applying that formula and principle when stopped by court action in Consolidated Freightways Corp., etc. v. Nicholas, supra. It is true that case did not turn upon the lack of authority under the compact, but nevertheless the board's effort to collect fees on that basis was stopped in 1963. In our consideration of the law at that time it was held the statute permitted only the use of total fleet miles in the denominator, and we did not reach the question of authority under the compact even though a similar argument was advanced therein.

 On the other hand, it appears that the board did not attempt to construe paragraph 9 of the appendix to permit the compact mile formula and redetermination until late in 1962. Although it is true that courts give weight to administrative interpretation of statutes where the meaning admits of doubt and the rule is of long standing (Northwestern States Portland Cement Co. v. Board of Review, 244 Iowa 720, 733, 58 N.W.2d 15, 23, and citations), it is well settled in this state that in the interpretation of taxing statutes doubtful language is to be resolved in favor of the taxpayer and against the taxing body. Dain Mfg. Co. of Iowa v. Iowa State Tax Comm., 237 Iowa 531, 533, 22 N.W.2d 786, 788. We are satisfied the same rule must be applied in this case where the appellants were attempting to increase the tax by interpreting the uniform compact so as to subject appellees to the compact rule formula and redetermination. At best we are uncertain as to the meaning of paragraph 9 of the Iowa appendix to the compact and resolve it against appellants' contention.

 Returning to appellants' contention that the exception in section 52 of the uniform compact permits each state legislature to change the formula without the

consent of the other states, or without complying with the 30-day termination notice provided in section 91, we do not agree.

To read the last clause in vacuo and ascribe to appellants' meaning would avoid the object and purpose of section 52 and the spirit of the entire uniform compact. Section 52 defines "total fleet miles" with respect to "each" contracting state. To ascribe to appellants' meaning of the section is to reduce this term to a mere suggestion or guideline which any state could change at any time without complying with sections 38 and 40 of the compact which require approval by the contracting states of any restrictions and modifications to the uniform compact.

Appellants' reading of this clause has evidently not been adopted by other states such as South Dakota. They have not relied on this section in adopting compact miles, but have clearly placed the compact mile formula in their appendix and obtained the specific approval of the other contracting states.

We believe this clause merely refers to the latitude which, by consent, can be extended to a state at the time it joins the compact. Its purpose was to obtain greater participation by all states—a hope which has not yet been realized. In other words, we believe this clause permits additional states who wish to join the compact, and whose law provides for the use of a different formula, to seek acceptance of such a formula by securing at that time the approval thereof through an appendix without having a conflict with the main body of the compact. It does not contemplate unilateral changes thereafter.

Appellants also maintain that section 52 of the compact permits the use of the 100 percent redetermination principle. We find no merit in this contention. Nothing in this section defining "total fleet miles", even by implication, authorizes a state to engage in redetermination of fees without the consent of the other states.

III. Appellants contend the trial court erred in holding the last paragraph of section 4 of chapter 302, Acts of the 61st General Assembly, which increased retroactive to January 1, 1965, the motor vehicle registration fee due Iowa from them, constituted invalid retroactive legislation in violation of the 14th amendment to the federal constitution. In sustaining plaintiffs' position the court ruled this legislation, by attempting to assess additional fees, operates retroactively in violation of the 14th amendment. In so doing, it apparently found the retroactive taxing provision was so unfair, unjust and unreasonable, as to be in violation of due process of law. We cannot agree with that ruling.

Division I of our opinion would seem to dispose of this contention unless the board had within a reasonable time obtained approval of its new formula and redetermination principle or had cancelled the agreement, but since this record fails to reveal whether any board action has been taken in this regard, we find it necessary to consider the issue.

The last paragraph of section 4 of chapter 302, Acts of the 61st General Assembly, states: "This Act shall be effective as to all apportioned vehicle registrations issued by the state of Iowa for the 1965 registration year and shall be in accordance with section 'e' of the Iowa interstate vehicle registration proration application for 1965."

Generally-speaking, revenue-producing legislation which has a retroactive aspect is constitutionally permissible unless the same is so unfair, unjust and unreasonable, as to be in violation of the due process provisions of the constitutions. We have held revenue legislation that is retroactive as to recent transactions where the taxpayer could reasonably anticipate at the time of the transaction that the nature or the amount of the tax imposed might be increased is constitutionally permissible. City National Bank of Clinton v. Iowa State Tax Comm., 251 Iowa 603, 102 N. W.2d 381, and citations.

In City National Bank we recognized the rule that if the taxpayer is reasonably forewarned that such a tax may later be levied or increased for a given period, the imposed tax usually will not be found unjustly oppressive or void.

It seems necessary in each case to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress constitutional limitations. 16A C.J.S. Constitutional Law § 419, pages 116, 117; Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L. Ed. 87; Cooper v. United States, 280 U.S. 409, 411, 50 S.Ct. 164, 74 L.Ed. 516.

Applying these rules to the case at bar, we note the retroactive operation of the 61st General Assembly amendment was applicable to transactions occurring only in 1965, the year this amendment was enacted. Could it be said under the circumstances revealed that the additional or altered tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute made the taxable event? In other words, was the taxpayer reasonably forewarned?

Appellants direct our attention to the fact that plaintiffs, through authorized representatives, had prior to January 1, 1965, executed an Iowa interstate vehicle registration proration application for 1965, which read in part: "Applicant * * * agrees that if the Iowa legislature enacts legislation providing for a different method of determining the prorate fees due Iowa for the 1965 registration year, and a redetermination of prorate fees due from applicant for 1965 registrations is made by the Iowa Reciprocity Board pursuant to said legislation, applicant will remit all additional fees owed to Iowa under said redetermination upon receiving notice thereof from the Iowa Reciprocity Board."

Although we give no consideration to the validity of such a promise, it appears clear plaintiffs had notice of the board's efforts to obtain legislative changes of that nature in the 1965 session of the legislature. In any event, it had adequate notice that, if the board legally proceeded, it could be required to pay additional fees.

The record further disclosed that notice was given and demand made for the additional fees in June and July 1965, but before any attempt was made to amend or cancel the compact this suit was commenced to contest the State's right to collect any retroactive fees.

In Welch v. Henry, supra, 305 U.S. at 146 and 147, 59 S.Ct. at 125 it is said: "Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax is not enough to point out that the taxable event, the receipt of income, antedated the statute."

Appellees rely principally upon the case of Untermyer v. Anderson, 276 U.S. 440, 445, 48 S.Ct. 353, 72 L.Ed. 645 for support of their contention that mere notice of pending legislation at the time of the application which would affect the proration of tax and make it retroactive, was not sufficient to sustain the retroactive feature.

As to this contention the court in Welch recognized a specific class of taxation where a retroactive tax has been held invalid, i.e., gifts made and completed before the enactment of the taxing statute. It said at page 147 of 305 U.S., at page 125 of 59 S.Ct.:

"In the cases in which this Court has held invalid the taxation of gifts made and completely vested before the enactment of the taxing statute, decision was rested on the ground that the nature or amount of

the tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute later made the taxable event. Nichols v. Coolidge, 274 U.S. 531, 542, 47 S.Ct. 710, 713, 71 L.Ed. 1184; Untermeyer v. Anderson, 276 U.S. 440, 445, 48 S.Ct. 353, 354, 72 L.Ed. 645 (citing Blodgett v. Holden, 275 U.S. 142, 147, 48 S.Ct. 105, 72 L.Ed. 206); Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562. Since, in each of these cases, the donor might freely have chosen to give or not to give, the taxation, after the choice was made, of a gift which he might well have refrained from making had he anticipated the tax, was thought to be so arbitrary and oppressive as to be a denial of due process. But there are other forms of taxation whose retroactive imposition cannot be said to be similarly offensive, because their incidence is not on the voluntary act of the taxpayer. And even a retroactive gift tax has been held valid where the donor was forewarned by the statute books of the possibility of such a levy. Milliken v. United States, supra, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809. In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation.

"Property taxes and benefit assessments of real estate, retroactively applied, are not open to the objection successfully urged in the gift cases. See Wagner v. Baltimore, 239 U.S. 207, 36 S.Ct. 66, 60 L.Ed. 230; City of Seattle v. Kelleher, 195 U.S. 351, 25 S.Ct. 44, 49 L.Ed. 232; * * *."

We do not think the receipts from fees charged for the use of Iowa highways by plaintiffs is comparable to a gift tax and, even though the plaintiffs may have had a choice of operating in Iowa or some other state when the proration application was made, they were at that time reasonably informed that the rate of tax might be increased. Indeed, they acknowledged this warning by signing the proration applications. We are satisfied the redetermination of the tax for the first part of 1965 was not arbitrary or oppressive, and was not unfair, unjust or unreasonable.

However, appellees contend, as participants in the proration agreement of the State and as real parties in interest under the compact or uniform agreement, they are not liable for any additional or increased tax and cannot be compelled to accept the retroactive assessment because the board had not taken the necessary steps to amend the compact or cancel its participation therein.

The record before us fails to disclose facts necessary for a final determination of that issue. From the record we are unable to determine whether any such timely action was taken by the Iowa board subsequent to the new legislation. Since further proceedings are necessary in this matter, the material facts to resolve this question may yet appear.

IV. The trial court correctly held that plaintiffs are proper parties to assert rights under the uniform compact, that defendants' claim that only the signatory states can raise the compact issue is without merit, and that interstate compacts have uniformly been construed to affect the rights and liabilities of private parties.

Section 37 of the compact relates to interpretations of the compact provisions but does not bar the assertion of rights of individuals affected. On the other hand, sections 13, 14, 15, 32, 35, 50 and 54, recognize the interests of private owners, make provisions relating to the privileges and duties of participating owners of commercial vehicles, and clearly indicate the compact is intended to benefit as well as obligate them.

Without reciprocity between states the operator of such a commercial vehicle would be required to pay a full license in each state through which the vehicle trav-

eled. Hendrick v. Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385; Kane v. New Jersey, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222. Under reciprocity agreements or compacts the operator may be permitted to use these highways upon the payment of one fee, the same to be prorated according to the provisions of the compact. Thus it seems obvious that, while the truck operators may not be parties to the agreement, they are fairly called beneficiaries thereunder. Under general contract principles they should be permitted to seek or protect their rights under the compact. We have gone far in recognizing the rights of beneficiaries under contracts. In Giarratano v. Weitz Co., 259 Iowa 1292, 147 N.W.2d 824, 832, we considered the question of third party beneficiaries under a contract and said: "Neither consideration from the beneficiary nor knowledge of the contract by the beneficiary is required. * * * Nor is it necessary that the third party be identified or identifiable when the contract is made." The test, we said, was whether plaintiff "though not a party to the contract was nevertheless a member of a class for whose benefit the contract was made." It is abundantly clear that the plaintiffs, as applicants under the uniform compact, were members of the class of fleet operators for whose benefit the contract in part was made. The contract inter alia provided what portion or part of the license fee each state would accept in lieu of a full fee, which it could assess, for the use of its highways.

It is true, one of the reasons for these compacts was to prevent an inequity to so-called bridge states which had few interstate operators but were furnishing highways for eastern and western transcontinental truck lines on a straight reciprocity basis. It further was designed to correct abuses under straight reciprocity, such as a shopping around by operators to secure the home base with the lowest fees. Of course, these abuses could be eliminated by a requirement that a full licensing fee be paid by those using each state's highways, a measure that would make interstate truck travel extremely expensive and effectively restrict such commerce. Thus, prorating substantially benefits this class of carriers.

Counsel have cited no cases, and we have found none, where affected parties under interstate compacts have been denied the standing to litigate and determine their rights thereunder. On the other hand, this right has been recognized and allowed in the following cases: Hinderlider v. La Plata, etc. Co., 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202; Green v. Biddle, supra, 8 Wheat. (U.S.) 1; Interstate Motor Freight System v. Bowers, supra, 146 Ohio St. 122, 128 N.E.2d 97. In Olin v. Kitzmiller, supra, 259 U.S. 260, 42 S.Ct. 510, 66 L.Ed. 930, an action by a private party to assert a right under an Oregon-Washington interstate compact, the State argued that since the compact was not made for the benefit of the appellant and did not guarantee that he should have any right or priority to a fishing license, or that a license of any kind would be issued to him, he was not a proper party to bring the action. The court found plaintiff could base his challenge on the interstate compact and proceeded to the decision on the merits.

Appellees' complaint is that the new legislation impairs the obligation of a prior interstate compact. As beneficiary or parties affected by that compact, they claim a right to seek relief before the courts. In any event, we are satisfied plaintiffs do have the standing to maintain this action to determine their rights and obligations under this uniform compact and chapter 302, Acts of the 61st General Assembly.

V. Having considered the issues presented by this interlocutory appeal, we remand the case to the district court for further proceedings not inconsistent with the holdings herein.

Modified and remanded.

All Justices concur.